P. C. HUMBLE and others v. W. M. MEBANE and others.

*Reference—Guardian—Administrators—Statute of Limitations—Sureties.*

1. A reference to take an account is irregular where a defence is set up to the entire action, and the allegations of fact, if found to be true, would defeat

the plaintiff's recovery, and in such case the court should direct the issues to be tried; but otherwise, where the defence relied on is no obstacle to the recovery.

2. A guardian who has received money by virtue of his office and for his ward, cannot exonerate himself from liability by showing that the money was due to the ward's father, who is a distributee of the estate from which it was derived.

3. Such distributee has the same redress against the administrator of the estate for his share thereof, as if the alleged misapplication had occurred in any other way; and the court *intimate* that, in case of the insolvency of the administrator, he may pursue the fund in the hands of the guardian who wrongly received it.

4. The plea of the statute of limitations in this case is defective, in that, it fails to state when the cause of action accrued, and when the wards arrived at full age. An allegation to show that the statute has run, and bars the action, is essential.

5. The statute protecting sureties, remarked upon by SMITH, C. J.

(*Earp* v. *Richardson*, 75 N. C. 84; *Means* v. *Hogan*, 2 Ired., Eq., 525, cited and approved).

CIVIL ACTION on a guardian bond tried at Fall Term, 1883, of GUILFORD Superior Court, before *MacRae, J.*

The defendant Mebane, in February, 1866, was appointed guardian to the relators (Preston C. and Rebecca Humble and Libby Louisa, now the wife of the other relator) by the county court of Guilford, and entered into bond as such in the penal sum of $2,000, with the other defendant and one R. P. Shaw, sureties, with conditions required by law.

The relators having arrived at full age on August 14th, 1879, instituted this action to recover the trust estate in the hands of the guardian, and assign several breaches of the obligation, and especially his failure to come to an account and pay over what is due, collected on their behalf.

The defendants deny the breaches assigned, and say that the moneys received by the guardian and supposed then to belong to the wards, in fact, did not, but were part of an estate left by their father's mother, to which their father, Simon Humble, alone was entitled as distributee, and which were paid to the guardian by the administrators of the intestate, wrongfully.

At fall term, 1880, on motion of plaintiffs' counsel, resisted by the defendants, on the state of the pleadings, a reference was made to the clerk and he was directed to take and report the guardian account with the several relators.

Before the referee, the defendants offered to show that the funds, with which it was sought to charge the guardian, were derived from the estate of the relators' paternal grandmother, and paid by her administrators; and that their father, who was entitled thereto, was still alive. The evidence was rejected for the reason that, in the opinion of the referee, the matter was not embraced in the terms of the order.

The referee made his report, in which he finds that the guardian, in his character as such, on a note passed to him by the administrators as part of the distributive share claimed for the infants, recovered judgment and raised by execution sale of the debtor's land the sum of $250; and also collected other moneys for the wards, with which, and without interest, for reasons which are given, the guardian is charged, the aggregate sum being $647.71.

Upon the return of the report, the defendants filed a series of exceptions, the issues presented by which, as well as the defence already stated and that under the statute of limitations, they demanded should be submitted to the jury.

This was declined, and the defendants having withdrawn exceptions numbered 3, 4 and 5, the others were overruled, and, it being admitted on the record that all of the estate, to which the relators claim to be entitled, came from the estate of their grandmother, the court proceeded to render judgment for the sum reported by the referee. From these rulings the defendants appealed.

*Mr. J. T. Morehead*, for plaintiffs.
*Messrs. Scott & Caldwell*, for defendants.

SMITH, C. J., after stating the above. It would be clearly irregular and unjust, where a defence is set up to the entire

action, to leave it undisposed of and direct a compulsory reference to have an account taken, and then, upon the coming in of the report, refuse to hear or to submit an issue, as to the facts upon which it depends, to the jury, if those facts found true would defeat the· plaintiffs' recovery. And it was not less erroneous in the referee to hear and report the evidence when offered, since it tended to show, according to the defendants' contention, that nothing to which the plaintiffs were entitled had passed into the guardian's hands which was covered by the bond. The very object of the reference is to ascertain what the guardian has received or ought to be charged with, and how the same has been administered. If no estate belonging to the wards has been or could have been recovered, no liability has been incurred, as none would be if the fund has all been legally disbursed and nothing is due. In either case the plaintiffs must fail. But if the defence relied on forms no obstacle in the way of the plaintiffs' recovery, then the course pursued by the court and by the referee, in shutting out an inquiry into the truth of the alleged facts upon which the defence is based, has done no harm to the defendants of which they can complain.

The entire controversy, then, hinges upon the point whether, where the guardian, by virtue of his representative agency, has reduced into possession moneys recovered by a successful assertion of his wards' right thereto, can exonerate himself from liability to them therefor by showing that the moneys were legally due, not to them, but to their living father, the rightful distributee to the estate from which they were derived, who is now claiming the same.

Assuming that the fund paid to the guardian belonged to the father, the rightful distributee of the intestate, and should have been paid to him by the administrators, does this fact authorize the guardian to retain what he collected *by virtue of his office and for his wards* and refuse to account for it to them?

Contrary to our first impressions produced by the argument for the defendants, our examination and reflections bring us to

the conclusion that the defence cannot be available by proof that the relators' father has the supreme right, as distributee to the intestate's estate, in the hands of the representatives.

The report shows that the administrators, recognizing the relators' right, paid over to the guardian *for them*, in money and in a bond, which he, in their behalf and as their guardian, afterwards sued on and collected by selling the debtor's land under execution, and with which he is charged in the account. He thus receives the moneys in trust for his wards and is accountable therefor, as their estate, which he cannot be permitted to dispute.

That the administrators should have paid the money to another does not authorize the guardian to withhold from his wards what was paid to him for them, and constitutes the estate that he receives and covenants to manage and at their majority deliver to them. The administrators may have committed a *devastavit* in this disposal of the intestate's estate, as they might do by any other wrongful act, but they remain responsible to the distributee, and he has the same redress against them upon their bond as if the waste and misapplication had occurred in any other way. He loses none of his rights as against them by reason of their maladministration of the estate in which he has a distributive share. *Means* v. *Hogan*, 2 Ired. Eq., 525.

A party may be sued separately by different claimants to the same property, and a recovery made by each. It would be no obstacle to the recovery by the rightful owner, that a previous plaintiff had wrongfully effected a recovery and been paid. So it would be no defence to an action by the father against the administrators, that they had paid the amount of his distributive share to the relators, or to their guardian for them.

It may be, we do not say it is so, the distributee, in case of the insolvency of the administrators, may pursue the funds into the hands of the guardian who has wrongfully received it, and this right would be unquestionable if there had been collusion between the parties, but this does not warrant the guardian in retaining a fund, where no steps have been taken to reclaim,

which he collected and holds in trust for his wards, and cannot dispute their right to it.

So if there were any sufficient reasons for apprehending an action against the guardian to be brought by the father, and a recovery effected, he may have a right, before paying the money, to have from his wards an indemnity against such claim; but even this would not obstruct the plaintiffs' recovery of judgment for the sum ascertained to be due, and relief could be obtained by suspending the enforcement by execution until the indemnity, if necessary, can be given.

The defendants also plead the statute of limitations, without stating the facts from which it can be seen that the remedy against the surety is barred, and that there are any controverted allegations of fact calling for the issue to be submitted to the jury. *Earp* v. *Richardson*, 75 N. C., 84.

There is no allegation in the pleadings as to when the cause of action accrued, and to show whether it was before or after the introduction of the new limitations contained in C. C. P., nor at what time the several infants attained full age, so as to put in operation the old statute protecting the sureties to the bond after three years from that period. The defence is set up jointly, and there was no statute formerly limiting the time within which actions must be brought on bonds, except the provision in favor of the surety; and the bar is unavailable under the present act, unless there has been an account audited (§33) for the guardian, or unless there has been a lapse of three years from the breach of the bond (§34, sub. 6) in favor of the surety. There should have been some averment to show that in law the statute has run and bars the action.

We cannot assign error, therefore, in the omission of the court to submit this issue to the jury. The judgment must be affirmed.

No error.                                    Affirmed.