HARRY BURKE and wife v. J. M. TURNER.

*Guardian and Ward—Payment under mistake of law.*

1. A guardian who receives money by virtue of his office and for his ward can-not exonerate himself from liability by showing that the same belonged to the ward's father, as a part of his life estate interest as tenant by the courtesy, but was paid by him to the guardian.

2. The fund here belonged to the ward, subject to the life estate interest of the father, and if paid by the latter to the guardian, under a mistake of law as to his rights, he cannot successfully assert a claim to recover it back.

(*Humble* v. *Mebane*, 89 N. C., 410, cited and approved).

CIVIL ACTION on a guardian bond tried at Fall Term, 1881, of IREDELL Superior Court, before *Seymour, J.*

This case is fully reported in 85 N. C., 500, where the judgment of the court below was affirmed, except as to the allowance of commissions to the defendant J. M. Turner, upon the two items therein specified, and as to these the account was corrected, and submitted at the last term of this court, when an order was made setting aside the last report and referring the matter to the clerk of this court to state the account in accordance with the opinion then rendered (89 N. C., 246), and in pursuance thereof he submitted his report to the present term, upon the consideration of which, and the exceptions taken and argued by counsel, the following directions and judgments were made:

*Messrs. J. M. Clement, Battle & Mordecai* and *R. Z. Linney,* for plaintiffs.

*Messrs. D. M. Furches, Robbins & Long* and *Armfield & Armfield,* for defendants.

MERRIMON, J.   The account heretofore taken in this case has been attended with considerable complication and some confusion. The very lucid statement of the account and the report thereof

made to the present term by the clerk of this court, make it manifest that so much of the opinion delivered at the last term (89 N. C., 246) as directed the sum of $1,024.19, theretofore allowed the defendant as a credit for board and clothing of the *feme* plaintiff, daughter of the former guardian, to be added to the indebtedness of the defendant therein specified, was erroneous. This was not an item of charge. The defendant was simply not entitled to have a credit for the payment of that sum which he alleges he had made. The directions in all other respects were correct.

The clerk will correct his report so as to make it conform to this direction. Judgment accordingly.

Upon the coming in of the report in obedience to the above directions, and the attention of the court being called to an error in the former account submitted under the ruling in this case as reported in 89 N. C., 246, an order of reference was made as follows:

MERRIMON, J. The clerk of this court has stated the account and made report thereof as directed in the opinion delivered at the last term, and modified by a further opinion at the present term. To this report no exception is taken, and it appearing to be just and acceptable to the parties, the court approves it.

Ordinarily, a judgment should be entered at once for the sum so ascertained to be due the *feme* plaintiff, but her counsel bring to the attention of the court an item of charge of $1,628.69, with interest on the same from the first of September, 1866, which they insist was admitted by the defendants to be due—was charged against them in the account as taken in the court below, and to which charge the defendants took no exception; and which they further insist ought to be added to the sum now appearing to be due the *feme* plaintiff.

The defendants, on the contrary, earnestly contend that they did not admit the item to be due, and that the exceptions to the report taken in the court below embrace it. They insist that it is of a real estate fund in which the former guardian of the *feme*

plaintiff had and has a life estate as tenant by the courtesy, and for which they are in nowise liable.

We are unable to determine satisfactorily, from what appears in the record and the explanations and arguments submitted by counsel, whether or not the *feme* plaintiff is entitled to recover the item of charge in question. We are left in doubt and perplexity as to the source from which it comes, and do not feel at liberty to dispose of the matter without further enquiry.

It is strange indeed that so large an item in the account was not thought of and considered in the repeated and earnest contests growing out of the exceptions: that it was not, can only be explained and excused upon the ground that the account has been a complicated one, and the taking of it attended with confusion.

The plaintiffs now contend that they thought it was admitted and settled in their favor. The defendants on the other hand insist that this claim has not been insisted upon until the present time. There seems to have been mutual mistake and misunderstanding.

In this state of the matter it must be referred to J. B. Connelly to enquire and report at this term of the court from what source the item of charge mentioned and referred to, came; and especially, whether it was part of the real estate fund in which the former guardian of the *feme* plaintiff had a life estate as tenant by the courtesy, or what part of the same, if any, came into the hands of the defendants. It is so ordered.

In obedience to the above directions, the referee submitted his report at this term, when the following ruling and judgment were made:

MERRIMON, J. The referee reports, that of the item of $1,628.69, that the plaintiffs seek to charge the defendants, and in respect to which an enquiry was ordered at the present term, $984.43 was of the fund in which the former guardian and father of *feme* plaintiff had a life estate as tenant by the courtesy, and bears interest from the first day of September, 1866. The

balance of the item is embraced in the account stated and approved, and no further question is made about it.

It thus appears that the former guardian paid to the defendant guardian $984.43, in which he had a life estate as tenant by the courtesy, and which he might, under the ruling of the court below, have refused to pay to his successor. That court held that the defendant guardian was not required by law to take steps to secure or recover that fund for his ward, in which the former guardian had a life estate as tenant by the courtesy, and was not, therefore, chargeable with that fund; but it did not decide that if Benjamin Turner *had paid* the defendant guardian that fund, or any part of it, he would not be chargeable with the same. So that it is an open question whether or not he is liable, and this is now presented for our decision.

The question of how far the defendant guardian might have been held liable, as guardian, for his failure to see that the fund in which Benjamin Turner had a life estate as tenant by the courtesy was secured, is not before us. The court below held that he was not so liable, and there was no appeal from that decision, and we are not at liberty to review it.

The fund belonged to the *feme* plaintiff, subject to the life estate interest of the father. If for any cause he chose to waive his right and pay the fund, or any part of it, to his daughter's guardian for her, we can see no reason why he might not do so. He had the right to do with his interest as he saw fit. If he chose to give it to his daughter he had the right to do so without question on the part of the defendants. If he so paid the $984.43 under a mistake of law as to his rights, he could not probably have reclaimed it; and if he became insolvent and wasted the balance of the fund, or appropriated the same to his own use, as the evidence tends to show he did, then, in equity, he would not be allowed to reclaim the sum so paid to the guardian. At all events, the defendant guardian having received the money as guardian and in trust for his ward, he is chargeable with it; and neither himself nor his sureties can now be heard to insist that he is not.

The father does not set up claim to the money so paid, and if he were to do so, he could not successfully assert such claim in the courts. He is estopped by his own act to set up such claim. In *Humble* v. *Mebane*, 89 N. C., 410, the Chief-Justice said: "The report shows that the administrators, recognizing the relators' right, paid over to the guardian *for them*, in money and in a bond, which he in their behalf and as their guardian afterwards sued on and collected by selling the debtor's land under execution, and with which he is charged in the account. He thus receives the money in trust for his wards, and is accountable therefor, as their estate, which he cannot be permitted to dispute." This authority bears directly and with conclusive force upon the question now before us, and must be decisive of it.

The *feme* plaintiff is entitled, in addition to the sum already approved, to have that sum enlarged by adding thereto the sum of $984.43, with interest thereon from the first day of September, 1866. Let judgment be entered accordingly.

Judgment accordingly.