J. W. GRANT, Administrator, v. W. A. REESE, et als.

*Findings of Fact—Jurisdiction of the Supreme Court—Reference—Evidence—Executors and Administrators—Inventory—Assets in Another State—Negligence—Confederate Money—Commissions.*

1. This Court has no power to review the findings of fact made by a referee in an action at law, but can only review errors of law in the admission of evidence, and erroneous conclusions of law from the facts as found.

2. The inventory returned by an executor or administrator into the Clerk's office, is *prima facie* evidence of the solvency of the persons owing debts to the estate and described in such inventory, if nothing be said in said inventory to the contrary, against the executor or administrator returning it, and the sureties on his bond, but *it seems* such inventory is not evidence against an administrator *de bonis non*, and the sureties to his bond.

3. Such inventory is not conclusive, and the defendants may show that the personal representative made errors and mistakes in describing and noting the debts in the inventory.

4. When an administrator dies, his administrator holds the funds of the first intestate for the administrator *de bonis non*, and it is his duty to account with such administrator *de bonis non*. When he does so, in the absence of evidence of mistake, or fraud and collusion, the presumption is, that the settlement was in full, and embraced all matters that ought to have been accounted for, and it shifts the burden of proof to the party attacking it, to show that debts due the estate of the first intestate, and returned by the deceased administrator as solvent, but which have not been collected, were collectable.

5. Apart from positive fraud, an administrator *de bonis non* is liable, if he fails to use due care and diligence in collecting from the administrator of the deceased administrator, all of the assets of the first estate unadministered by him, and it is his duty to do this, without any demand or request from the creditors or distributees of the first estate.

6. Where an administrator received into his possession certain slaves belonging to the estate of his intestate, he, and the sureties on his bond, are liable for their hire received by him, in the same manner as for the hire or price of other chattels so received.

7. In such case, where the slaves were hired in 1863 and 1864, and the administrator used reasonable diligence in hiring them and collecting the hire, if the same was paid in Confederate money, and the administrator kept it apart and separate as part of asset of the estate, and it was lost by the results of the war, the administrator is not liable.

8. In such case, in the absence of evidence of the amount of hire which the administrator· actually received, he should be charged with the reasonable hire of the slaves in Confederate money, and this amount should be scaled, in the same manner as if he had converted the Confederate money received from such hiring.

9. It is a public fact, of which the Courts take judicial notice, that there was no currency in this State during the years 1863 and 1864, except Confederate money, and that ordinary business transactions were almost uniformly discharged by that currency.

10. Where one used Confederate money, not his own, he must account to him whose money he used, for its value in gold, with interest thereon.

11. Where an administrator sold and assigned a judgment due the estate of his intestate, for fifty *per centum* of its face value, and on the same day, the judgment debtor paid the assignee the entire amount due on the judgment, and it appeared that at the time of the assignment, the judgment debtor was solvent, and the judgment collectable; *It was held*, gross negligence, and the administrator and the sureties on his bond were liable for the full amount of the judgment.

12. In such case, it is no justification to the administrator that the counsel for the next of kin authorized such sale, unless the counsel has express authority from his client to do so.

13. An administrator is, in an important sense, a trustee for those who will take benefits under his intestate.

14. Where a person dies domiciled in this State, having personal property in other States, the personal estate, wherever situated, must be distributed according to the laws of this State, but each State has the power to administer so much of the estate as may be within its jurisdiction, for the security of domestic creditors, and when they are provided for, to distribute the remainder to the persons entitled, without regard to the place of their domicil.

15. Where a person dies in North Carolina, having personal property in Virginia, the Virginia administrator is not bound to account to the administrator here, for the surplus after paying debts, nor is the administrator in this State required to collect such surplus from the foreign administrator.

16. The grant of letters of administration, although general in its terms, is limited to the administration of property in this State, and gives no authority to the administrator to administer the property in another government, and a failure to return such property on his inventory, is no breach of his bond.

46

17. In such case, if the administrator received such foreign assets, he may, in equity, be held personally to account, on the ground of a personal trust in the administrator, without regard to where it was assumed.

18. An executor stands upon a different footing, as he derives his authority from the will, and not simply from the law, and when he proves the will as required by the law of the domicil of the testator, it passes the property to him, wherever it may be situated, according to its legal effect.

19. An administrator de bonis non, cum testamento annexo, although required to execute the will, does not stand on the same footing in all respects as an executor, as his authority is derived from the law, and not from the will, and he cannot sue in another jurisdiction, to recover the assets of the estate.

20. So, where a testator died domiciled in this State, leaving debts due by parties in Virginia, the administrator de bonis non, cum testamento annexo, and the sureties on his bond, are not liable for a failure to return such notes on the inventory in this State and collect the same, when there is administration on the estate in Virginia.

21. In such case, if there is no administration in Virginia, the administrator would be personally liable, if he had received such notes, and failed to make diligent effort to collect them ; but whether his bond would be liable or not, quære.

22. An administrator or executor is not entitled to commissions under all circumstances, but he must have earned them by an honest and just discharge of his duty, and it must appear that the receipts and expenditures have been fairly made, in the course of the administration.

23. Where an administrator failed to file any inventory or annual accounts of his administration, and it appeared that he had been guilty of gross negligence and want of care in his management of the estate, he is not entitled to commissions.

(Armstead v. Harramond, 4 Hawks, 339 ; Hoover v. Miller, 6 Jones, 79 ; Yarborough v. Harris, 3 Dev., 40 ; Huntingdon v. Spears, 3 Ired., 450 ; Thompson v. Badham, 70 N. C., 141 ; Ferebee v. Baxter, 12 Ired., 64 ; Badger v. Jones, 66 N. C., 305 ; University v. Hughes, 90 N. C., 537 ; Governor v. Williams, 3 Ired., 152 ; Plummer v. Brandon, 5 Ired. Eq., 190 ; Carmichael v. Ray, Ibid., 365 ; Saunders v. Jones, 8 Ired. Eq., 246 ; Medley v. Dunlap, 90 N. C., 527 ; Helme v. Saunders, 3 Hawks, 563 ; Williams v. Williams, 79 N. C., 417 ; Finch v. Ragland, 2 Dev. Eq., 137 ; Burke v. Turner, 85 N. C., 500 ; Carr v. Askew, ante, 194, cited and approved).

CIVIL ACTION, heard on exceptions to the report of a referee, before Graves, Judge, at January Special Term, 1885, of the Superior Court of NORTHAMPTON county.

The defendants appealed.

The facts are fully stated in the opinion.

*Mr. T. N. Hill*, (*Mr. R. B. Peebles* was with him on the brief,) for the plaintiff.

*Messrs. W. C. Bowen, Willis Bagley*, and *W. H. Day*, for the defendants.

MERRIMON, J.   The alleged errors are imperfectly assigned, and we find it difficult to determine the meaning and application of some of them.   Such as apply to alleged erroneous findings of fact, we cannot correct, if, indeed, they exist, because this is simply an action at law, and we have not jurisdiction to review the findings of fact.   We can only correct errors of law, in the admission of evidence, and in other respects, properly assigned. If we fail to reach the whole merits of the case, such failure must be attributed to the loose, imperfect and confused manner in which the alleged errors are assigned.

I.  The plaintiff, as administrator *de bonis non*, of Sterling Smith, deceased, who was, in his life-time, the sole devisee and legatee named in the will of Martha Parker, deceased, seeks to charge the defendant Reese, as administrator *de bonis non, cum testamento annexo*, of the said Martha, and the other defendants, sureties to his bond as such administrator, with having failed to collect and account for certain notes, and other evidences of debt of his testatrix, as he should have done, and was bound to do.

The referee, in taking the account in the course of the action, charged the defendants with the face value of several of such notes, and other evidences of debt, and the interest due thereon, the only evidence of the solvency of the persons owing them respectively, being the *inventory*, in which they were named and described, of the property and effects returned into the late Court of Pleas and Quarter Sessions of the county of Northampton, by the former and first administrator *de bonis non, cum testamento annexo*, of the said Martha.   The referee received that inventory as *prima facie* evidence of the solvency of the persons owing such notes, and other evidences of debt named, and, upon exception by the defendants, the Court sustained the action of the referee in this respect.

The defendants insist that this ruling of the Court is erroneous, and we are of that opinion.

The inventory of property, returned by an executor or administrator into the proper office as required by the statute, is *prima facie* evidence of the solvency of the persons owing debts mentioned and described therein, if nothing there be said to the contrary, as against the executor or the administrator and his sureties. The law requires such inventory to be made under oath, and it is the duty of an executor or administrator, incident to his office as such, to make proper inquiry as to the property—its nature and condition—with which he ought to be charged, and it is presumed when he notes it in the inventory, that he describes it correctly, as the property of his testator or intestate, as the case may be, and as to debts due the estate, that the parties owing them are solvent, if nothing explanatory in that respect be said. And the inventory, as evidence of such facts, is admissible against the sureties to the bond of the administrator, because they stipulated that their principal would make the inventory, as required by the statute. In this respect, they stand upon the same footing as the administrator. *Armstead* v. *Harramond,* 4 Hawks, 339; *Hoover* v. *Miller,* 6 Jones, 79. The executor or administrator may show, however, that the debtor was insolvent, and generally, that he had made mistakes in noting the property properly, and its condition. The inventory is not conclusive against him or his sureties. *Yarborough* v. *Harris,* 3 Dev., 40; *Huntington* v. *Spears,* 3 Ired., 450.

But it may be questioned, whether such inventory of the first administrator, could be *prima facie* evidence of such solvency of the debtor, as against the administrator *de bonis non.* The persons owing the debts may have become insolvent before they came to the hands of the latter, and besides, he had no part in making that inventory, or opportunity to ascertain the condition of the property described in it. While for some purposes, there is a privity between the administrator and the administrator *de bonis non,* as was decided in *Thompson* v. *Badham,* 70 N. C.,

141; it is not at all clear, that this prevails to the extent of making the inventory of the first administrator, *prima facie* evidence against the second and his sureties.

But we do not find it necessary to decide whether or not this is so. It appears that the defendant administrator, and the administrator of the first administrator *de bonis non*, &c., of the testatrix, had a settlement long prior to this action, in ·which it was ascertained that the first administrator *de bonis non*, owed the estate of his testatrix but the sum of fifty dollars, and this sum was paid to the defendant administrator. The latter had the right to make such settlement. The former held the assets of the testatrix, in the hands of his intestate, for the defendant administrator, and it was his duty to account faithfully for the same. As such settlement might be made, and was made, the presumption is that it was a proper one in all respects, and embraced all matters that ought to have been accounted for, as it purported to do. It was not, however, conclusive. The plaintiff might show that it was carelessly and improvidently, or fraudulently made, to his prejudice and injury. The presumption is, that this settlement embraced the notes and other evidences of debt in question, and hence the burden of showing that they were not, and that the persons owing them were solvent, was on the plaintiff. One effect of the settlement, was to shift the burden of proof to the plaintiff, in the respects mentioned.

II. It is insisted further by the defendants, that the settlement just mentioned, was conclusive, in the absence of fraud; and moreover, that no demand was made by the plaintiff on the defendant administrator, that he compel the former administrator *de bonis non* to account for the notes in question, and in all other respects.

This is a mistaken view of the effect of that settlement. While, as we .have seen, there was a presumption in favor of its regularity and propriety, it was clearly not conclusive. It was the duty of the defendant administrator, to require—if need be, to compel—the administrator of the former administrator *de bonis non*, to account

faithfully to him for all the property of every description, that he was properly chargeable with, of his testatrix.   This he ought to have done with reasonable promptness, and he ought to have exercised like reasonable care and caution in making the settlement mentioned.   He would be justly liable, if he negligently failed to exercise due care in obtaining all that was properly due, and this ·is so, apart from positive fraud.   It was competent for the plaintiff, by any proper evidence, to show such lack of diligence and care.   For example, he had the right to show if he could, that the persons indebted to the testatrix were negligently treated in the settlement, as insolvent, when in fact, they were abundantly solvent.   And it was the duty of the defendant administrator, to compel an account of the property of the testatrix, as indicated above, without a demand that he do so on the part of the plaintiff.   The law charged and required him to be diligent and faithful in the discharge of his duties.   *Ferebee* v. *Baxter*, 12 Ired., 64; *Badger* v. *Jones*, 66 N. C., 305; *University* v. *Hughes*, 90 N. C., 537, and cases there cited.

III. The defendants are charged with the hire of four negro slaves for the years 1863 and 1864, at $80 each, per annum. This charge is based upon the evidence of witnesses, who testified before the referee, that such hire would be reasonable, if paid in the present currency of the country.   The defendants contend that it was not the duty of the first, administrator *de bonis non*, to have charge of and hire out the slaves of his testatrix, and if it were, then the value of the hire in "confederate currency," should have been ascertained, and the scale of depreciation of that currency should have been applied.

The last mentioned administrator was charged by the law with the slaves, as he was with other personal property of his testatrix, to be disposed of as was directed by the will, and if he realized hire for their labor, while he had control of them in the course of the administration of the estate by him, such hires were embraced by the condition of his bond as such administrator.

But he ought to have been held to account for such hire as he received, if he exercised reasonable diligence and care in hiring the slaves, and collecting the hire when due. If he received "Confederate money" in payment for the hire, and kept it set apart as a part of the assets of the testatrix, then he ought not to be chargeable with it at all, as that currency, without his default, became utterly worthless as a result of the late civil war.

But in the absence of evidence as to what he really received as hire, he should be charged with the reasonable hire of the slaves, paid in Confederate currency, and the scale of depreciation prescribed by the statute, should have been applied, as if he had used the money he had received for the hire. It is a public fact, of which the Court takes notice, that there was no *currency* in this State in the years 1863 and 1864, other than "Confederate currency," and that ordinary business transactions, were generally, almost uniformly, discharged by that currency. It is just and reasonable to require the administrator *de bonis non*, who received the hires, to account for the same, as if he had received and used them. It would be unconscionable to require him to account for what he did not get! The rule is, that where one used Confederate money, not his own, that he must account to him whose money he used, for its value in gold or silver, with interest thereon.

IV. The defendant administrator received a note of his testatrix, for $746.59 due September 24th, 1858, against P. B. Sykes, payable to H. W. Ivey, and endorsed by him to the testrix in her lifetime. The said Ivey died in 1860 or 1861, intestate, and administrators of his estate were duly appointed, and the defendant administrator obtained judgment *quando* against them, for $1,313.17, with interest on $746.59, thereof, from May 22nd, 1871, and for $10.35 costs. Ivey was solvent at the time of his death, and his estate was sufficient to pay all his indebtedness, from that time, until the taking of the account.

On the 19th day of November, 1872, the defendant administrator, "compromised," (what this means we cannot tell,) the

judgment mentioned, by selling and assigning it to a third party, for $678.14. On the same day, the administrators of Ivey, paid the purchaser thereof the whole amount of money due upon it, and thus discharged it. The Court, sustaining the action of the referee, held that the defendants were properly charged with the whole amount of that judgment, and the defendants excepted.

Accepting the facts as found by the Court, there was no substantial reason for selling the judgment at all, much less selling it for fifty *per centum* of its face value. The estate of Ivey was sufficient to pay it, and all the debts chargeable upon that estate. And yet the defendant administrator sold the judgment for fifty *per centum* of the sum of money due upon it! And the administrator of Ivey, on the same day, paid the purchaser the full amount due upon it, and discharged it! It seems to us manifest, that the defendant was grossly negligent in making such disposition of the judgment, and that the defendants were properly charged with the face value of it. So far as appears, no reasonable cause existed, prompting such sale.

It seems that the defendants contended, that the counsel of a former administrator and of the next-of-kin of the intestate of the plaintiff, authorized the sale. But the Court finds as a fact, that the counsel did not authorize it; that another counsel, (it is not found as a fact that he was counsel for the administrator or the next-of-kin,) did authorize it, "upon condition that the amount be paid over immediately to his clients," which was not done, and has not been done. This questionable permission of counsel, cannot be treated as authorizing and justifying the sale in question. Indeed, even if the counsel had expressly given his permission to make it, he having no special authority from his clients to do so, this would not be a sufficient justification. The administrator was bound to exercise reasonable diligence, care, and caution, in collecting the debts of his testatrix. He was, in an important sense, a trustee for those who might be entitled to take through the deceased legatee. When he made such a sale, he knew, or ought to have known, that he was making an

unnecessary and unwarranted sacrifice of half of a large judgment which could be collected, to the manifest prejudice of the estate of the deceased legatee. The counsel referred to, simply as such, had no authority to authorize such a sacrifice, and if he gave the defendant administrator permission to make it, and he acted upon such permission, he did so at his peril. The defendants were properly charged with the whole amount of the judgment.

V. A note belonging to the estate of the testatrix, against a person residing in the State of Virginia, not far distant from the county of Northampton, in this State, for $286.00, due May 7th, 1860, was noted and described in the inventory mentioned above, and it passed into the hands of the defendant administrator. The latter deemed it necessary that he should become administrator *cum testamento annexo* of his testatrix, in the State of Virginia; he did so, and there collected the debt above described. It does not appear that the testatrix had property, other than the note mentioned, nor does it appear that she owed any debts there, nor that the administration there has been completed. The defendants sureties, insist that they ought not to be charged with this debt, because it properly belonged to the administration in Virginia. The Court, sustaining the action of the referee, held that they were properly charged with it, and they excepted.

The administration of the estate of the testatrix in the State of Virginia, is distinct from, and has no connection with that in this State. This State being the domicile of the testatrix, her estate, wherever situate, must be distributed according to its law—that is, among the persons, and in the proportions prescribed by that law. But each State has the power to administer so much, and such parts of the estate, as may be within its jurisdiction, for the security of domestic creditors, and to distribute the surplus, if any, to the persons so entitled, without regard to the place of their domicil. The administrator in the former State, is not obliged to account to the administrator here,

for such surplus—the latter has no interest in it, because the laws of this State have no extra territorial operation—they cannot, and do not undertake, to force the administrator here, to demand and collect from the administrator abroad, any surplus that may remain in his hands, after the payment of the debts and costs there, any more than to sue for, and recover a debt due the intestate beyond the limits of this State.   And hence it was held in *Governor* v. *Williams,* 3 Ired., 152, that administration of an estate granted here, although general in its terms, is necessarily limited to the property in this State, and gives no authority to the administrator to administer the property in another government—that the administrator cannot be required to return an inventory of such property, and that a failure to do so, would be no breach of his administration bond, although the administrator might, in equity, be required to account personally, wherever he might be found, to those entitled to the estate in his hands. This rests on the ground of a personal trust in the administrator, without regard to where it was assumed.   The administration in this State, does not authorize the administrator to sue abroad, nor is he held responsible for property within a foreign jurisdiction, certainly, when there is administration of the property of the intestate there.   *Plummer* v. *Brandon,* 5 Ired. Eq., 190 ; *Carmichael* v. *Ray,* Ibid., 364 ; *Saunders* v. *Jones,* 8 Ired. Eq., 246 ; *Medley* v. *Dunlap,* 90 N. C., 527, and cases there cited.

An executor, however, stands upon a different footing, in some material respects.   When he proves the will as required by the laws of the domicil of the testator, it passes the property, wherever it may be situate, to him, according to the legal effect of the will.   He derives his authority from the will, and not simply from the act of the law.   *Helme* v. *Saunders,* 3 Hawks, 563 ; *Governor* v. *Williams, supra.*

The administrator *de bonis non, cum testamento annexo,* as in this case, although clothed with the power, and he is required to execute the will, according to its legal effect as if he were executor, does not stand upon the same footing in all respects

with an executor. He derives his authority, not from the will simply, but from the statute, (The Code, §2168,) and he would not be treated as an executor in another State, nor would he have power to sue there as administrator, because his authority is conferred by the law, and not by the will.

Inasmuch as there was administration of the estate of the testatrix in the State of Virginia, and the person owing the note in question lived in that State, the defendant administrator was not required to return an inventory of it in this State, nor was there any breach of his administration bond, by reason of his failure to account for it, or the proceeds thereof, in this State. He was bound to account for it in Virginia, and only there, as administrator. His sureties ought not, therefore, to be charged on that account in this action. *Governor* v. *Williams, supra.*

It might possibly have been otherwise, if there had been no administration in Virginia. In that case, the defendant administrator, having the note in his possession, it would have been his duty to make reasonable and diligent effort to collect it without suit, and his negligent failure to do so, would have made him personally liable, upon the ground that he was a trustee, as was decided in *Williams* v. *Williams,* 79 N. C., 417; but whether his failure to do so would have been a breach of his administration bond, is a question not yet decided, nor is it entirely free from doubt.

VI. The Court, sustaining the action of the referee, decided that the defendant administrator was not entitled to commissions for "receipts and expenditures," and the defendants excepted.

This exception cannot be sustained. An executor or administrator is not entitled to commission at all events. He must have earned them, by a just and reasonable discharge of the duty of his office. It must appear, that the receipts and expenditures, on account of which the same are claimed to be due, "have been fairly made in the course of administration." The Code §1524; *Finch* v. *Ragland,* 2 Dev. Eq., 137; *Burke* v. *Turner,* 85 N. C., 500; *Carr* v. *Askew, ante,* 194.

It appears that the defendant administrator failed to return any inventory of property of the testatrix, or any annual account of his administration, and to pay the money in his hands to the persons entitled to have the same, as he was required by law to do. Moreover, the principal part of the money in his hands, was the fruit of the sale of the judgment already mentioned above, which was sold for half its value. There was, as we have seen, gross negligence. The receipts and expenditures were not "fairly made in the course of administration," in the sense of the statute, and the law will not allow compensation to him who thus disregards its commands, and neglects to observe its requirements.

We believe that what we have said, in effect disposes of the errors assigned in the record.

There is error. The report of the account stated must be recommitted to the referee, Mr. Mason, with instructions to retake and state the account, in accordance with this opinion, and to make report thereof to the next term of the Court.

Let a proper order to this effect be entered. The case will be retained for further action. *It is so ordered.*

Error.                                    Reversed and retained.