STATE ex rel. WM. T. ROPER et al. v. J. W. BURTON, Adm'r, et al.

*Executors and Administrators—Findings of Fact by Referee— Next of Kin—Administrator d. b. n.—Bond—Sureties—Distributees—Partition—Evidence—Interest—Statute of Limitations.*

1. The findings of fact by a referee, approved and affirmed by the Judge in the Court below, where there is any competent testimony to support them, cannot be reviewed by this Court.

2. In an action by the next of kin against the administrator *d. b. n.* of the decedent and his sureties for his failure to collect or account for the proceeds from sales of certain slaves made by a former administrator: *Held,* that the liability of the administrator *d. b. n.* depends on the liability of the former administrator as such.

3. Where it appeared, in an action against the administrator *d. b. n.* of a decedent, that the former administrator, under an order of Court in an old action brought by the next of kin, sold and hired out "for the legatees" certain slaves which had been set apart to them in partition had between them and the widow of such decedent, and took notes payable to himself "as administrator," and collected and invested the proceeds of some of them, and the cash for slaves sold at once "as administrator"; but it further also appeared of record that the administrator sold the slaves for division: *Held,* (1) that there was sufficient evidence to sustain the finding of the referee that the old action was for *division* among the next of kin, and was not for *distribution* by the administrator; (2) the administrator did not act in his administrative capacity in investing the cash and proceeds of sale; (3) he and his sureties are not liable for his neglect to collect or account for the proceeds of sale; (4) the administrator *d. b. n.* and his sureties are

not liable for failure to collect such notes and investments which came into his hands from the former administrator; (5) the administrator *d. b. n.* and his sureties are liable for such amounts as he collected by virtue of his office, and this without regard to the liability of the former administrator; (6) and it appearing further that the administrator *d. b. n.* did not use the money he did collect as such, and that he could not distribute it because the next of kin could not be ascertained, he was not chargeable with interest.

This was an action pending in the Superior Court of ROCKINGHAM County, tried before *Gilmer, J.,* by consent of parties, at Chambers, on the 31st of December, 1889, upon exceptions filed by both sides to the report of James T. Morehead, Referee, etc.

The plaintiffs only appealed from the ruling of his Honor.

Charles Roper, of the County of Rockingham, died intestate in said county on the __ day of ____, 1857, without issue, but leaving a widow, Rebecca Roper, and Chalmers L. Glenn was duly appointed administrator of his estate at February Term, 1857, of the County Court of said county, and qualified and gave bond as such administrator in the sum of $40,000, with E. T. Brodnax and Jones W. Burton as sureties. Chalmers L. Glenn, administrator, died in September, 1862, without having fully administered, and Jones W. Burton qualified as his administrator at the November Term, 1862, of the County Court of Rockingham.

At the February Term, 1867, of the County Court of said County, Jones W. Burton qualified as administrator *de bonis non* of said Charles Roper, and gave bond as such, with the said E. T. Brodnax and Samuel Smith as sureties, in the sum of $20,000.

E. T. Brodnax died on the __ day of ____, 1874, leaving a will, and on the 6th day of July, 1874, said Jones W. Burton and Annie S. Glenn, executor and executrix named therein, qualified as such.

Jones W. Burton died in 1888, leaving a will, and Mary A. Burton, the executrix therein named, qualified as such, and

R. J. Lewellyn was appointed administrator *de bonis non* of Charles Roper, and he and Mary Burton, executrix, &c., were made parties, the former as plaintiff, the latter as defendant, without objection, to this action, instituted at the Spring Term, 1884, in the Superior Court of Rockingham County, by the plaintiffs, who are next of kin of Charles Roper, deceased, against Jones W. Burton, administrator *d. b. n.* of Charles Roper, deceased, and Jones W. Burton and Mrs. Annie S. Glenn, executor and executrix of E. T. Brodnax, deceased, to recover damages alleged to be sustained by the breach of the bond of said Jones W. Burton, administrator *d. b. n.* of Charles Roper in failing to account, &c.

The defendants answered, denying all liability, and alleging matters in defence and bar of plaintiffs' recovery.

At the January Term, 1886, of the Superior Court, it was, by consent, referred to James T. Morehead, Esq., "to ascertain and report to the next term of this Court, without prejudice to the defendants, or to any preliminary defence contained in the pleadings—

"1. All the facts bearing on any issue in the pleadings and his conclusions of law.

"2. The number and names of the next of kin of Charles Roper, deceased.

"3. An account of the estate of Charles Roper, deceased, which came, or should have come, to the hands of Jones W. Burton, administrator *de bonis non* of Charles Roper, deceased."

Mr. Morehead made his report to the July Term, 1889, of his findings of fact and conclusions of law, together with a full and voluminous record of the evidence upon which his report is based. To this report there were numerous exceptions filed, both to the findings of fact and conclusions of law, presenting many questions for the consideration of this Court, but as they mainly relate to the liability of the defendants for the sum of $10,312.29, the proceeds of the sales of slaves made by Chalmers L. Glenn (the adminis-

trator of Charles Roper) on the 2d of January, 1860, in the view taken by the Court, it becomes unnecessary to consider all of them in detail, as that practically settles the matters in controversy.

Charles Roper died possessed of a number of slaves, and his widow, Rebecca Roper, was entitled, under the then statute of distributions, to one-half of them, and his next of kin to the other half; and the 8th and 9th findings of fact by the referee are as follows:

"8. At the August Term, 1857, of said County Court (County Court of Rockingham), Rebecca, the widow of Charles Roper, filed a petition against the next of kin of her deceased husband, and C. L. Glenn, administrator, asking for a division of the slaves of her late husband between herself and the next of kin, and for a settlement of said Glenn's administration. The said Court appointed commissioners to divide said slaves, and referred to its Clerk to state Glenn's administration account, and to ascertain and report who were the next of kin of said Charles Roper. The said commissioners made their report, showing a division of the negroes, allotting one-half to said widow and the other half to the next of kin, which report was confirmed by the Court. This proceeding was ended at May Term, 1860, by an order reciting that a suit in equity was then pending involving the unfinished matters involved.

"9. At Fall Term, 1859, of the Superior Court of Law and Equity for Rockingham County, William Roper and others, next of kin of said Charles Roper, deceased, filed their bill against C. L. Glenn, administrator of Charles Roper, deceased, praying a settlement of his administration and for a sale for partition of the remaining half of the slaves (alleging that the widow had received her half) among the next of kin, and the defendant Glenn, administrator, answered, submitting to a settlement and consenting to the sale of slaves for

107—34

partition. At the same term, the Court decreed the sale of slaves, as asked for, on a credit of six months, and appointed 'Chalmers L. Glenn, administrator of Charles Roper, deceased,' to make the sale. Said Glenn sold the slaves on the 2d day of January, 1860, for $10,385, which sum was reduced to $10,312.49 by reason of his accepting cash for three of the slaves and discounting the price three per cent. He took notes for the balance, as directed in the order, payable to himself as administrator, of all of which actions he made report to Spring Term, 1860, of said Superior Court, signing his report 'C. Glenn, Commissioner,' &c., which report was confirmed at said term. In the order confirming the report it is recited that 'C. L. Glenn having filed his report,' and it was also ordered that the master 'state and settle the account of C. L. Glenn as administrator of Charles Roper, deceased,' and report next of kin of said Charles Roper, deceased. This cause was continued, 'under former order,' until Spring Term, 1868, the death of C. L. Glenn having been suggested at Fall Term, 1862. At Spring Term, 1868, *leave* was granted to make Jones W. Burton, as administrator of C. L. Glenn, and as administrator *de bonis non* of Charles Roper, deceased, party defendant, and again '*referred* to master to inquire for next of kin and state account of the estate of C. Roper.' The cause was continued, 'under former order,' up to and including Fall Term, 1868. Nothing more was done in this cause. At Spring Term and Fall Term, 1868, the style of the cause was 'William Roper *et al.* against Jones W. Burton, administrator *de bonis non* of Charles Roper.' This cause was never *transferred* to civil issue docket."

His 10th, 11th, 12th, 13th, 14th, 15th and 16th findings of fact are as follows:

"10. Jones W. Burton, as administrator *de bonis non,* advertised for creditors as directed by law in cases of original administration.

"11. Jones W. Burton and Annie S. Glenn, as executors of E. T. Brodnax, advertised for creditors according to law in July, 1874.

"12. C. L. Glenn collected on the sale notes of several thousand dollars, a large amount of which, and the cash received on the day of sale, he loaned to the firm of Smith & Burton, of which firm said Jones W. Burton was a member, and to others, and took notes payable to himself as administrator for the same, which came to the hands of Jones W. Burton after he had qualified as administrator *de bonis non* of Charles Roper. I do not find the facts as to solvency of the obligors of said notes, and as to the fact of the *bona fides*, or *mala fides*, or *laches*, or diligence, of Glenn, administrator, or of Burton, administrator *de bonis non*, as the same are immaterial, if my conclusions of law upon the facts found are correct.

"13. The firm of Burton & Smith were adjudged bankrupts, and Jones W. Burton, as administrator *de bonis non*, received from the assignee in bankruptcy, on the notes given by the firm to C. L. Glenn for the money borrowed from him, a part of the funds received from the sale of the negroes which had been proved in bankruptcy, $952.46.

"14. Burton, administrator *de bonis non*, collected nothing from the other sale notes, or from any other source, except the sum of ninety-eight cents.

"15. Burton, administrator *de bonis non*, did not use the money collected from the assignee in bankruptcy, and could not distribute the same, as the next of kin of Charles Roper had not been ascertained, and for the same reason could not have distributed the amount in Glenn's hands unadministered at the time of his death if he had collected it.

"16. The breach of the condition of the bond complained of occurred after the 1st of January, 1869, and before the 1st of March, 1869."

The referee finds, as a conclusion of law, that the administrator *de bonis non* Jones W. Burton, and his sureties, are

liable upon his administration bond for his default in not collecting from the estate of C. L. Glenn a balance of $126.72 in his hands as administrator of Charles Roper, deceased, on the 1st of January, 1860, after payment of debts, allotment of widow's year's allowance and payment to her her distributive share of the proceeds of sale of perishable property, collection of debts and hire of slaves.

He further finds, as conclusions of law—

"2. Neither Chalmers L. Glenn, nor his sureties, are liable upon his administration bond for the notes received, nor the money collected for price of slaves sold by order of the Court of Equity. He did not sell as administrator of Charles Roper, nor as 'clerk,' but as 'a fit person' appointed by the Court to 'make sale.' Revised Code, ch. 82, § 18; *Fanshaw* v. *Fanshaw*, Busb., 166.

"3. Jones W. Burton, administrator *de bonis non*, and the sureties, are not liable on his bond for the non-collection of the sale notes which came into his hands, nor for the non-collection of the notes received by C. L. Glenn for the money loaned to Burton & Smith and others, which was the proceeds of the sale of slaves. The money and notes were the property of the next of kin of Charles Roper, deceased, and not of the administrator of said Charles Roper, and for the same reason it was not the duty of the administrator *de bonis non* of Charles Roper to collect from the estate of C. L. Glenn any amount for which he might be liable individually on account of his actions as Commissioner of the Court of Equity.

"4. The administrator *de bonis non* of Charles Roper, Jones W. Burton, and his sureties, are liable upon his administration bond for such amount as he collected by virtue of his office and for his intestate's estate, to-wit, the dividends paid him by the assignee in bankruptcy of Burton & Smith. I hold the sureties liable in deference to the decision in *Humble* v. *Mebane*, 89 N. C., 410, in which there was no distinction

made between liability of principal and sureties, although both were sued on the bond.

"5. The action as to the executors of E. T. Brodnax is barred by the statute of limitations (eight years as sureties on bond of Jones W. Burton, administrator *de bonis non,* and seven years as executors after qualification and advertisement). It is not barred as to J. W. Burton, administrator *de bonis non,* the principal in this suit."

The following is the statement of account of Jones W. Burton, administrator *de bonis non* of Charles Roper, deceased:

DR.

| | | |
|---|---|---|
| To amount in hands of C. L. Glenn, administrator of Charles Roper, on January 1st, 1860 | $ | 126 72 |
| To amount received from assignee in bankruptcy of Burton & Smith, and sale of notes | | 953 44 |
| | $ | 1,080 16 |

CR.

| | | |
|---|---|---|
| By disbursements, costs of administration and commissions, | | 217 39 |
| Balance for distribution | $ | 862 77 |

The plaintiffs filed the following exceptions to the report of the referee:

"*Exception to finding eighth*—1. That the referee should have found that the petition filed by Rebecca Roper in the County Court at August Term, 1857, against the next of kin and C. Glenn as administrator, was filed for a settlement and distribution of the estate of Charles Roper, including a distribution of the slaves, and not for a 'division' of the slaves, as the referee has erroneously found. And that said referee should have found that the division of the slaves of said Charles Roper was therein ordered in this wise only: That one-half of said slaves should be allotted to the widow, and the residue of said slaves left in the hands of Chalmers · Glenn as administrator.

"*Exception to finding ninth*—2. Plaintiffs except, and say that referee erred in finding: (1) that the equity suit instituted at Fall Term, 1859, was for a 'partition' of the slaves of Charles Roper amongst the next of kin; and (2) that the administrator, C. Glenn, assented to a sale of the slaves for 'partition;' and (3) that said Glenn made report of the sale, and signed it as commissioner; when, in fact, the evidence shows that it was a suit for 'settlement and distribution,' and that C. Glenn signed his report as administrator of Charles Roper, and not as commissioner, and the referee should have so found his facts.

"*Exception to finding eleventh*—3. Plaintiffs except to the finding by referee that Jones W. Burton and Annie S. Glenn, as executors of E. T. Brodnax, advertised for creditors, according to law, in July, 1874, the evidence taken in the case being insufficient to warrant such finding by the referee. 4. Plaintiffs except because referee did not find that the defendant Burton, as administrator *de bonis non*, and the defendants Burton and Glenn, as executors of Dr. Brodnax, are liable for the debt of George W. Burton, and also for the debt of George L. Aiken, and because of his failure to charge them with said debts, since the evidence shows that with reasonable diligence he might have collected these debts.

"*Exception to finding fifteenth*—5. Plaintiffs except to the finding of the referee that defendant Burton, as administrator *de bonis non*, did not use the money collected by him from the assignee in bankruptcy, and because he did not find as a fact that said Burton did not use said money, or a part of it.

"*Exception to finding sixteenth*—6. Plaintiffs except because the referee finds that the *breaches* of the bond complained of occurred between January 1st, 1869, and the 1st day of March, 1869.

" 7. Plaintiffs further except because the referee failed to charge the said J. W. Burton, administrator *de bonis non*, and his sureties, with the amount of money loaned by C. Glenn, as administrator to the firm of Burton & Smith, of which firm said J. W. Burton was a member.

### EXCEPTIONS TO CONCLUSIONS OF LAW.

" 8. The plaintiffs except to the second conclusion of law, for that the referee does not find that Chalmers Glenn and his sureties are liable on his administration bond for the notes and money received from sale of slaves made under the decree of the Court of Equity, said slaves having been sold for distribution and not for partition, and further, because said referee finds that said Glenn and his sureties are not so liable.

" 9. Plaintiffs except to his third conclusion of law, in that he finds that said Burton, administrator *de bonis non*, and his sureties are not liable for the notes and money received on the sales of the slaves made under the order of the Court of Equity, or for the money collected by Glenn, and afterward loaned to other parties, and especially to Burton & Smith and to George W. Burton and George L. Aiken, and because he did not find that said Burton and his sureties were liable for said money and notes for sale of slaves, and for the money loaned out by said Glenn to the parties above named, viz., Burton & Smith, George W. Burton and George L. Aiken.

"And the plaintiffs further except to the conclusion of the referee that the notes and money are the property of the next of kin, and not the property of the administrator; and further, because the referee did not find, as a conclusion of law, that Burton, administrator *de bonis non,* is estopped to deny that the notes and money are the property of the administrator by the fact that he treated the same as such,

and brought suits and recovered judgments in his own name as such administrator.

" 10. Plaintiffs except to the conclusion of law five, wherein the referee finds, as a conclusion of law, that the action is barred by the statute of limitations as to the estate of E. T. Brodnax.

" 11. Because the referee failed to find that C. L. Glenn, as administrator of Charles Roper, was liable on his bond for interest on the sum of $126.72 from January, 1860, and that J. W. Burton, administrator *de bonis non*, was liable for interest on the same, and also for interest on $952 46, received from the assignee in bankruptcy."

On the hearing, and after argument by counsel, his Honor adjudged "that all the exceptions on the part of the plaintiffs, as well as those on the part of the defendants, be and the same are overruled," and the report of the referee was, in all things, confirmed, and judgment rendered in accordance therewith, from which judgment and rulings of his Honor the plaintiffs appealed, assigning the several grounds of error indicated by their exceptions, and also to the judgment rendered.

*Mr. L. M. Scott* (*Messrs. Boyd & Johnston*, by brief), for plaintiff.

*Mr. R. B. Glenn*, for defendants.

DAVIS, J.—after stating the facts: The principal question involved in the controversy before us is, Was Jones W. Burton, administrator *d. b. n.* of Charles Roper, and the sureties on his administration bond, liable to the plaintiffs by reason of the failure or neglect of the said administrator *d. b. n.* to collect or account for the proceeds of the sales of the slaves made by Chalmers L. Glenn under the decree of the Court of Equity of Rockingham County made at the Fall Term, 1859, of said Court? And this will depend upon the further

question, Was Chalmers L. Glenn (and the sureties on his administration bond) liable, *as administrator*, for the proceeds of the sales of said slaves?

It is insisted by the plaintiffs that the slaves were sold by Chalmers L. Glenn, as adminstrator of Charles Roper, deceased, for settlement and distribution, and not for a "division" of the slaves among the next of kin, and that the referee erred in his ninth finding of fact, as set out in the second exception. If there was any competent evidence to support the finding of fact, it is too well settled to need citation of authority that the finding of the fact by the referee, approved and affirmed by the Judge below, is conclusive, and cannot be reviewed by this Court. Was there any evidence to support the finding, and to show that Chalmers L. Glenn, not as administrator acting in the due course of the administration of the assets of the estate, but as commissioner, appointed by and acting under the decree of Court as such, to make the sales of the slaves for partition among the next of kin under the direction of the Court?

The learned counsel who so ably argued the cause in behalf of the plaintiffs says:

"Before partition could be asked for and made, the slaves must have passed from the possession and control of the administrator Glenn into the possession of the next of kin, as tenants in common and not as distributees. The assent of the administrator must be given to pass the property to the next of kin, and must appear by some visible sign or act. Here the next of kin were scattered, and even unknown, and all who were known evidently regarded the slaves as in the possession and control of the administrator as such. There was no purpose to change such possession except by sale, the proceeds of sale to be and remain in the hands of the administrator as such, under the security of his bond for the safe custody of the money. Glenn took notes for the purchase-money of the slaves in his own name as

adminstrator, collected the money in part, and loaned some of it in his own name as administrator of Charles Roper. After the death of Glenn, the administrator *d. b. n.*, Jones W. Burton, received the notes and bonds as a part of the estate of the intestate Roper, so considered and treated them, and returned them as such, and brought suits and took judgments on said notes and bonds as administrator of Roper, and collected some portions of it as the estate of his intestate."

It abundantly appears from the evidence that the slaves were not needed in the administration of the estate to make assets to pay debts, and it appears from the record that, at the November Term, 1857, of the County Court of Rockingham, the widow of Charles Roper being entitled to one-half of the slaves, commissioners theretofore appointed for that purpose allotted to the widow certain slaves (naming them), and certain other slaves (naming them) " to the legatees." And it further appears from the record that, for the years 1858 and 1859, the slaves allotted to the legatees were hired out by " C. L. Glenn, administrator for the legatees of Charles Roper."

It further appears that the next of kin were scattered in different States, and their names and residences could not all be ascertained, and certain of them, acting under the advice of learned and eminent counsel, filed a bill in equity for a sale of the slaves. Judge DILLARD says in his evidence, " the negroes having been divided," a bill in equity was filed in the name of William M. Roper and others (next of kin of Charles Roper), " for the sale of the negroes which had been set apart to the next of kin," etc.

The record shows that the application for the sale was not made by the administrator " for the purposes of paying debts, or distribution, or both," under chapter 46, section 17 of the Revised Code, but by some of the next of kin of Charles Roper, for partition, as allowed in chapter 82, section 18

of the Revised Code, who alleged that, besides the plaintiffs named in the bill, Charles Roper, deceased, had two brothers and four sisters, who left the State of Virginia, "their former place of residence," twenty years or more since, and had not been heard from, either by the petitioners or by the said administrator, after "diligent inquiry," and are presumed to be dead; they further say that "slaves are now selling for a fair price, and in view of the possibility of other next of kin of Charles Roper being discovered thereafter, they are advised, and the administrator, C. L. Glenn, concurs, that it would be best to sell the said slaves and distribute the proceeds, together with all the other personal estate, to them as such next of kin, under proper provisions for the benefit of others, should they be discovered," etc.

The administrator answered, and after admitting facts stated in the petition and asking the Court "to see that he is amply protected before it shall decree" that the complainants are entitled to the whole of the estate, "upon the *presumption* that others of the next of kin are dead," he says that he concurs in the opinion "that it will be best to to sell the slaves," etc.

There was a decree for sale, and a sale in pursuance thereto, as set out in the ninth finding.   After the allotment and assignment of one-half of the slaves to the widow and the other half "to the legatees" by an order of the Court, it appears from the evidence that C. L. Glenn hired them out "for the legatees."

It will be observed that the slaves were not sold upon the application of the administrator, as provided in chapter 46, section 17 of the Revised Code.   He had administered the estate of the intestate, had paid its debts, and was ready to turn the slaves over to the persons entitled to them, and did deliver one-half of them to the widow, and held the other half and hired them out "for the legatees," or distributees, until, upon *their* application, they were sold by him under a

decree of the Court of Equity, and the record shows that he made the sale "for the legatees," acting under the authority of the Court, and there was ample evidence to ·support the finding of fact, and as was held in the case of *Fanshaw* v. *Fanshaw*, Busb., 166, "he and his sureties were certainly not liable upon his administration .bond for his default," if there had been any, and it is but just to his memory to say that we think the record discloses the fact that the administrator, Glenn, acted with careful regard to the interest of the next of kin of his intestate, and the proceeds of the sales of slaves made by him were as well secured as reasonable foresight could have secured them (certainly as well secured as the slaves would have been); and the losses, as shown by the evidence, occurred after· he was killed, while in the Confederate Army, on September 17th, 1862; and upon the facts disclosed.it is by no means certain that under the ruling of this Court in *Worthy* v. *Brower*, 93 N. C., 344, and *Grant* v. *Reese*, 94 N. C., 720, that there was any default for which, in any event, he or his sureties could have been held liable.

We think the case of *Fanshaw* y. *Fanshaw*, *supra*, fully sustains the referee in his conclusions of law, and his Honor below in his ruling as to the non-liability of the administrator and his sureties on his administration bond. But it is said by counsel for appellant that, in Fanshaw's case, the Court held "that John Fanshaw, as administrator, had no rightful authority to sell the slaves until he had obtained an order of the County Court for that purpose, and it is not pretended that he ever did obtain such an order." In our case he (Glenn) did obtain an order to himself, as administrator of Charles Roper, to sell the slaves. This is a double misapprehension. 1. Fanshaw did sell under the authority of an order of the Court, as commissioner, and, though "he returned an account of the sales of the slaves as having been made by him as administrator," the Court held that he

and his sureties were not concluded by that return. 2. Glenn *did not obtain an order to himself, as administrator of Roper, to sell the slaves.* The record shows that the order to sell the slaves was made, not upon the application of Glenn as administrator, but upon the application of the next of kin; and, though he took the bonds of the purchasers to himself as administrator, he reported the sale as made by him "for the legatees," and did not report it as made by him as administrator, as was done in Fanshaw's case, and in that respect this case is stronger for the defendant.

But, without reference to the liability of Glenn and the sureties on his administration bond, it is insisted by the learned counsel for the plaintiffs that, as the notes were made payable to Chalmers Glenn as administrator, and after his death and the appointment of Burton as administrator *d. b. n.* in 1867, the latter received the notes into his hands as administrator *d. b. n.* as a part of the estate and assets of his intestate, as rendered in his inventory, brought suit on some of the notes in his name as administrator *d. b. n.*, and, on going into bankruptcy, rendered a statement of them in his schedule of debts as due from Smith and himself to himself as administrator *d. b. n.*, and actually received dividends, as such administrator, from the assignee in bankruptcy, he is estopped, and cannot be heard to deny his liability, and the liability of the sureties on his bond therefor, and for this position he cites, among other authorities, *Humble* v. *Mebane,* 89 N. C., 410, and *Burke* v. *Turner,* 90 N. C., 588, in our own reports. These cases only go to the extent of holding that where a guardian (and the same rule would be applicable to any other fiduciary) has received money by virtue of his office as guardian and in trust for his ward, he is chargeable with the money so received, and neither he himself nor his sureties can be heard to say that he is not.

There is nothing in the ruling of his Honor below in conflict with this position. On the contrary, in accordance with it, the administrator *d. b. n.* and his sureties were held to be chargeable with the money actually received on account of the proceeds of the sales of the slaves, and this would have been so without reference to the liability of the original administrator; but when the liability for the slaves as assets in the hands of the administrator ceased, as it did—when they were surrendered as not needed to pay debts, and first divided between the widow and the next of kin, and afterwards sold for partition at the instance of the next of kin, they became, in a legal sense, *goods administered,* and the liability of the first administrator as such, and that of the sureties on his bond, ceased, and no responsibility or liability attached to Glenn other than as commissioner acting under and subject to the order of the Court as to the collection and disposition of the proceeds of the sale of the slaves, as, and no more than, any other person appointed by the Court to sell would have been, and any mistake as to his rights and duties on the part of the administrator could create no liability as against the sureties on his bond except as to the sums *received* by virtue of his office. *Fanshaw* v. *Fanshaw, Humble* v. *Mebane* and *Burke* v. *Turner, supra.*

This renders all the other exceptions of the plaintiffs immaterial, and relieves us of the necessity of considering them, except the eleventh, which relates to the failure of the referee and the Court below to charge the administrator with interest on the sums named.

The referee finds as a fact, in substance, that the administrator *d. b. n.* did not use the money collected either from the assignee in bankruptcy or from the estate of Chalmers Glenn, the former administrator, and that he could not distribute the sum because all of the next of kin of Charles Roper, deceased, had not been ascertained. The evidence shows that the payment of the money to the next of kin

was delayed because of the fact that the names and resi-
dences of all the next of kin of Charles Roper could not be
ascertained, and they were not ascertained till by the report
in the present action, but the objection is not based upon the
ground that there was no evidence to support the finding, or
that the finding was upon incompetent evidence, and we
cannot review the finding of fact except for those causes.
Upon the facts found, the defendant was not chargeable
with interest.    *Grant* v. *Edwards,* 92 N. C., 442, and cases
cited.

There was no error in the ruling of his Honor below of
which the plaintiffs can complain, and the judgment must
be affirmed.

There is no error.                                   Affirmed.