JOHN W. VAUGHAN v. W. D. FARMER.

*Wills—Power of executor to sell land.*

1. After a bequest of personal property, the testator devises lands (one-sixth; part to be given to devisees named), and, upon the death of his wife, provides that the same "be sold for the best price that can be obtained, and the money divided as hereinbefore named, that is to say, into six parts," with a similar provision in other clauses of the will in reference to land and personalty, but without saying by whom to be sold; *Held*, that the executors have a power of sale by implication.

2. The general rule, that executors have no power to sell lands directed to be sold for division among devisees, when no one is designated to make the sale, does not apply where by a proper construction of the will the intent of the testator to vest such power in the executors appears by implication or otherwise.

(*Foster* v. *Craige*, 2 Dev. & Bat. Eq., 209; *McDowell* v. *White*, 68 N. C., 65; *Hester* v. *Hester*, 2 Ired. Eq., 330, cited and approved).

SPECIAL PROCEEDING commenced before the clerk and heard at Spring Term, 1882, of WILSON Superior Court, before *Gilmer, J.*

This was a proceeding for an order to sell certain mill property for partition. The plaintiff alleged that the sale of the same by executors under the power supposed to be conferred upon them by the will of the testator, was contrary to law. Upon the facts agreed, which are set out in the opinion here, the court below held that the plaintiff was not entitled to maintain his action, and from the judgment dismissing the same, the plaintiff appealed.

*Messrs. Connor & Woodard*, for plaintiff.
*Messrs. Strong & Smedes*, for defendant.

SMITH, C. J. John Batts died in the year 1858, seized and possessed of certain real estate, known as his mill, and leaving a will which was in April proved before the county court of Wilson, and the executors therein appointed (William B. Batts and William W. Batts), at the same time accepted the trust, took the prescribed oath, and entered upon the discharge of their duties. The mill is devised in the first clause of the will as follows:

Item 1. "I give unto my wife, Mary Batts, during her life or widowhood, one feather bed and furniture, one blue chest, one cow and calf, one sow and pigs, one claybank mare, one sideboard, and one blue beaufet, all the kitchen furniture; and also one hundred acres of land, together with the dwelling and other improvements, with the whole of the grist-mill and contents; and after the death or widowhood of my wife, Mary Batts, I give to my son, David W. Batts, the same hundred acres of land, as given to my wife; and after the death or widowhood of my wife, Mary Batts, I give to all my living daughters, and to my granddaughter, Mary A. Gay's living children one-sixth part of the above named mill; unto my daughter, Kessiah Morris' living

children one-sixth part of the said named mill; I give unto my daughter Rebecca Batts one-sixth part of the said mill; I give unto my daughter Bashaba Williford one-sixth part of the said mill; I give unto my daughter Eveline Parker one-sixth part of said mill; I give unto my daughter Milly Batts one-sixth part of said mill, and devise, after the death or widowhood of my wife, for said mill to be sold for the best price that can be obtained, and the money divided as herinbefore named—that is to say, to be divided into six parts."

The life tenant and surviving wife went into possession and occupied the devised lands until her death in 1863.

In May, 1864, the executors, in the assumed exercise of the power conferred and in accordance with the understood directions of the testator, advertised and sold the mill property for the sum of one thousand dollars on a credit of six months (two-thirds of the purchase money required to be paid in coin and one-third in currency) to the defendant, and rendered an account thereof to the said county court. The price being paid, the executors conveyed by deed the said mill property to him, and he has since remained in the occupation and use of the same.

The devisee and daughter, Milly Batts, intermarrid with one Vaughan and died in 1860, leaving the plaintiff, John W. Vaughan, their only child; and the father also died before the institution of this action, on April 21st, 1879.

The other divisees have assigned their interest in the mill to the defendant.

The plaintiff, assuming the nullity of the deed made by the executors, demands in his complaint that the mill be sold and his part of the proceeds separated and secured to him.

The only question presented in the plaintiff's appeal and argued before us is as to the validity of the action of the executors in undertaking to execute the directions of the testator in the disposition of the remainder in this property.

It is conceded to be the rule enforced in the courts of England, that where lands are directed to be sold in order to a division

among the devisees, and no persons are designated to make the sale, the power cannot be exercised by the executor, whose functions are confined to the administration of the personal estate. The same rule, where some statute does not interpose, prevails generally, and is recognized in the adjudications in this country. But, as it is a matter of construction with a view of ascertaining the testator's intention, the power vests in the executors when that intent appears by implication or otherwise.

Thus, if there be a mixed fund consisting of both real and personal estate, as the latter is in the hands of the executor and he must dispose of that, it will be inferred that the testator meant that he should dispose of both estates.

And the same inference is drawn from a direction to pay debts or provide a fund for the discharge of legacies, and, indeed, whenever it is seen that the funds derived from the sale are to go into the hands of the executor as such, in order to give effect to the will. In all such cases the power is deemed to vest in the executors by necessary implication. Sugden on Powers, 134; *Foster* v. *Craige*, 2 Dev. & Bat. Eq., 209; and the numerous authorities referred to in the opinion of DANIEL, J., *McDowell* v. *White*, 68 N. C., 65; *Devol* v. *Fanning*, 2 John. Ch. Rep., 252; 4 Kent. Com., 327.

In a more recent case before Vice-Chancellor Wigram, where the testator devised certain copy-hold lands to be sold at public auction without saying by whom, and he bequeathed the money arising from the sale among certain persons, it is said: "I think, upon the authorities as they now stand, I am bound to hold that the executors have a power of sale by implication, and that they are therefore properly made parties to this suit. *Curtis* v. *Fulbrock*, 8 Hare Ch., 25.

As the intent of the testator may be ascertained from the association of both kinds of property in the devising clause itself, or from the requirement of service appropriate to the office of executor, so it may be from other provisions of the instrument where similar terms are used, for it is reasonable to suppose they are meant to bear the same sense and meaning in each.

The first clause gives to the wife many specific articles of personal property as well as the lands for her life or widowhood, and of these the remainders in only two are bequeathed.

In the second clause the testator gives to his daughter Rebecca the sideboard, and in the third clause a blue beaufet, after his wife's death, both of which are mentioned in the bequest to her in the first clause.

In the sixth clause he uses this language: "The balance of my land, together with all other property belonging to me of every description, not otherwise disposed of, I wish, after my death, *to be sold* for the best price that can be obtained, and after paying all my just debts to whomsoever owing, and the balance, if any, to be divided among all my living children."

In the next he declares his wish, that after the death or widowhood of his wife, " *all the property as is left her and has not been given away before, to be sold,* and the proceeds of said sale to be equally divided among my living children."

In neither of these clauses is any person designated to make the sale, and yet, in the last, it is of *personalty* only; and in the former, both land and personalty; of which the proceeds are to be applied to debts so far as necessary. And it is plain the executors possess the power to act in both, upon the interpretation already mentioned.

Now, in the first clause, the mill is to be sold, and in the last, the personal articles, limited for the life of the wife, at her death; and how can the conclusion be avoided that the same agency was to be employed in the disposal of both? And this purpose is the more manifest, that the residue consisting of undisposed of real and personal estate is to be converted into money for the primary purpose of discharging the testator's debts. These duties devolve upon the executors, and it is wholly inadmissible, where there is a like silence in reference to the person to sell in all, that the same general direction should not be carried into effect by one and the same agency.

It was suggested that our statute (Rev. Code, ch. 46, §40) confers this authority upon executors and renders needless any

specific imposition of the duty upon them. The statute was passed obviously not to enlarge the powers conferred upon executors, but to provide for cases where some die or refuse to act; or where all die or refuse to act; or where none are nominated, and give the same power, conferred upon all, to such as will assume the trust, or to an administrator with the will annexed. The first portion is a substantial re-enactment of the act of 21 Henry VIII, ch. 4, with an amendment to supply an omission and provide for the case where no executors are appointed, which was, however, by construction held to be within the scope of the statute, in *Hester* v. *Hester*, 2 Ired. Eq., 330.

It is true the amendment confers the power where no executor is named "in a will devising lands *to be sold or to be sold by executors;* but a larger operation, given to these words than those used previously, which vest the power in a part of the executors, when the will directs" land *to be sold by his executors,* would result in the bestowal of more power upon the administrator than could be exercised by the executors, and this cannot be deemed the meaning of the law. They are omitted in THE CODE, §1493, and the latter conforms to the first part of the statute.

There is no error in the record and the judgment must be affirmed.

No error. Affirmed.