STATE ex rel. K. H. WORTHY v. ALFRED BROWER.

*Administrator—Devastavit—Reference—Evidence—Partner-*
*ship—Slaves, Emancipation of—Refunding Bonds.*

1. The bond of a deceased administrator cannot be charged, in an action by the administrator *de bonis non*, with solvent notes, which went into the hands of the administrator *de bonis non*, and could have been collected by him.

2. Where, in a series of findings by a referee, some are proper, an exception to the whole will not be allowed.

3. Where, in a book in which the administrator kept his account with the estate, a certain note due to the estate is marked "paid," but the entry bears date before the death of the intestate; *Held*, not a proper charge against the administrator, in the absence of evidence that the amount was paid to him.

4. Where, in his inventory, an administrator returned the receipt of a deputy sheriff for four bonds due the estate of his intestate as being in his hands, which receipt was found among the papers of the estate at his death; *Held*, that he was not chargeable with the amount of the bonds.

5. Where there is no evidence of the solvency of a note due the estate, found uncollected among the papers belonging to the estate, after the death of the administrator, and it is found by the Court below, that even if solvent, the collection was delayed and impeded by the stay laws and the general disturbed condition of the country, the administration bond is not responsible to the estate for the amount of the note.

6. Where one partner dies, the surviving partner has the right, and it is his duty to settle up the partnership matters. So, where on the death of a partner, his administrator did not have a settlement with the surviving partner of his intestate's interest in the firm, his bond is not liable for the amount of such interest in an action by an administrator *de bonis non*, in the absence of evidence that any detriment came to the estate by the failure of the first administrator to have a settlement. In such case the right to enforce the settlement, passed to the administrator *de bonis non*.

7. In the absence of evidence to the contrary, each partner is presumed to be equally interested in the joint business.

8. Where an intestate was possessed of a large number of slaves at his death, and other real and personal property more than sufficient to pay all of his debts, and his administrator, who was one of the next of kin, had the slaves divided among the distributees, but took no refunding bonds; *Held*, 1st, that this was technically a *devastavit*, although the creditors of the intestate had a right to follow the property and subject it to their debts; 2nd, that by the emancipation of the slaves by the Sovereign, the condition of the refunding bonds, had any been taken, would have been fulfilled, and therefore, that as the creditors have suffered no harm from the *devastavit*, they cannot recover therefor out of the administration bond.

9. Where an administrator pays taxes out of the funds of the estate, assessed against his intestate as guardian, it is an improper disbursement and his bond is liable therefor.

10. Where an administrator pays debts of inferior dignity, he is liable, unless he had funds of the estate in his hands sufficient to pay all the debts.

(*Brumble* v. *Brown*, 71 N. C/, 513; *Whitford* v. *Foy*, *Ibid.*, 527; *Meekins* v. *Tatem*, 79 N. C., 546; *Suit* v. *Suit*, 78 N. C., 272; *Barnhardt* v. *Smith*, 86 N. C. 473; *Bost* v. *Bost*, 87 N. C., 477; *Taylor* v. *Taylor*, 2 Murph., 70; *Hinton* v. *Whitehurst*, 68 N. C., 316, cited and approved).

CIVIL ACTION, tried before *MacRae, Judge,* on exceptions to the report of a referee, at December Special Term, 1883, of MOORE Superior Court.

The facts are fully stated in the opinion.

*Mr. E. C. Smith,* for the plaintiff.
*Mr. M. S. Robins,* for the defendant.

SMITH, C. J.  Robert W. Goldston died intestate early in October, 1861, and letters of administration on his estate issued to George W. Goldston, who entered into a bond in the penal sum of thirty thousand dollars, with the defendant and one Crabtree Siler, sureties, with the conditions prescribed by law, for the faithful execution of the trust assumed. Without completing administration, George W. Goldston died in July, 1863, and letters *de bonis non* on the intestate's estate issued to Noah Richardson. The latter also died in May, 1867, and letters *de bonis non* were then granted to one Alexander Holley, then public administrator, and he having resigned his public office, the relator became administrator *de bonis non* of the original intestate. The present action is on the administration bond of the first administrator, George W., against the surety, in which maladministration, waste and negligence are charged, to recover the assets which are, or ought to be, in the hands of the said George W., as principal obligor therein, and was begun by the issue of a summons on the 30th day of August, 1876.

To the complaint filed, a demurrer was interposed by the defendant, which was overruled, and the defendant then answered, admitting some of the plaintiff's allegations, and controverting others for want of personal knowledge, or "information thereof sufficient to form a belief." At Fall Term, 1877, the clerk of the Superior Court of Moore, being a creditor of the estate, and interested in the result, an order was entered, of reference to C. C. Wade, clerk of the Superior Court of Montgomery, to take and state the administration account of the said George W. Under a ruling of the Court, the relator was required to furnish, and did submit, a statement of the trust funds that had come into his hands, a detailed list of which, verified by his oath, is contained in the record. The commissioner proceeded under the reference, and with accompanying evidence, made report to a succeeding term. To the report many exceptions were taken by each party, and the finding of the referee being deemed insufficient, with consent, it was recommitted to him with directions to ascertain from the evidence already taken, and report the facts responsive to a series of inquiries which are set out in the order. The referee accordingly made a second, or, as it is called, a supplemental report at Fall Term, 1883, to which further and additional exceptions were also taken by each party. In accordance with the rulings of the Court, the report was again referred to R. P. Buxton for correction and reformation, and he reported an account showing an excess of disbursements made by the intestate's first administrator, the said George W., above the value of the assets with which he is charged, of three thousand and ninety-six dollars and forty-four cents ($3,096.44), estimated with interest to February 6th, 1882, and reducing the excess as reported by the first referee by the sum of three hundred and ninety-seven dollars ($397).

This preliminary statement of the action of the Court, is sufficient to enable us to enter upon an examination of the numerous exceptions contained in a record of nearly four hundred pages in manuscript, brought up by the relator's appeal.

Plaintiff's exceptions:

1. The referee has not charged the administrator with all the claims, which, uncollected, passed into the hands of Noah Richardson, his successor. We concur with the Court in overruling the exception for the reasons given :

1. That many of them were then solvent and could have been collected.

2. The plaintiff does not specify which of them ought to be charged, and we may add,

3. Because a single objection to a series, valid as to a part only, is not allowable.

The correctness of the ruling is sustained by the following adjudications : *Brumble* v. *Brown,* 71 N. C., 513 ; *Whitford* v. *Foy, Ibid.,* 527 ; *Meekins* v. *Tatem,* 79 N. C., 546 ; *Suit* v. *Suit,* 78 N. C., 272; *Barnhardt* v. *Smith,* 86 N. C., 473 ; *Bost* v. *Bost,* 87 N. C., 477.

2. The relator's second exception is to the omission to charge the administrator with one of the claims in a list found in a book wherein the administration account is kept, marked in pencil as paid. The entry bears date June 14, 1861, four months before the death of the intestate. Many others are also marked paid with .which he has charged himself. It does not appear whether this debt was paid during the intestate's lifetime or since, nor is there any other evidence that payment was made to the administrator, or that the entry was intended for any purpose except to designate it as a paid debt, no longer due, and relieve the debtor from a further demand. The Court upon these facts refused to sustain the charge, inasmuch as the administrator has charged himself with all others so marked, and his death deprives the defendant of all means of explanation. We are not disposed to disturb this ruling of the Court.

3. The third exception is to the referee's refusal to charge the administrator with certain bonds, notes, and a judgment received and inventoried by the administrator, and specifically mentioned in the exception.

Of these, three of inconsiderable amount are withdrawn by the relator—the exception sustained as to the notes of Wilson and Phillips, whose aggregate principal is $36\frac{53}{100}$, and overruled as to the two bonds of Davis and the bonds of Short and Stutts, whose united principal is $204\frac{53}{100}$. This ruling rests upon these findings of facts :

The notes of Wilson and Phillips are returned in the inventory of the intestate's estate to April Term, 1862, of Moore County Court, and no mention is made of them thereafter.

The four bonds, the exception in reference to which is overruled, were returned in a receipt of one J. L. Curry, a deputy of the sheriff, entered in the inventory, and this receipt was among the papers belonging to the estate, at the death of the administrator in November, 1863. There is no error in this.

4. The relator excepts to the omission of the referee to charge the administrator with a debt of $349, due from G. W. I. Goldston to the intestate.

This exception is overruled upon the ground of the absence of any evidence of the solvency of the debtor. The Court says if the debt was good, the collection of it was so obstructed by State legislation in the enactment of a stay law, and by the general disturbed condition of the country, as to excuse the administrator for his delaying an effort to enforce payment, and if the debt could not have been collected by reason of the debtor's insolvency, he is not, of course, responsible. The reasons assigned for not sustaining the exception seem sufficient.

5. The 5th exception is abandoned.

6. This exception is to the failure of the referee to charge the administrator with one-half of the value of a stock of goods belonging to the firm of Goldston & Hanner, in which the intestate was senior partner, and which remained in the hands of the surviving member at his death. The findings upon which this exception is overruled are these :

The administrator and Hanner were partners of the firm named, and were carrying on the joint business when the former

died. In the fall or spring preceding the late civil war, the intestate went north and purchased a stock of goods, the unsold part of which, at his death, are estimated to be of the value of $6,000 or $7,000. There is no proof of the interests of the separate partners in the common property; nor of the extent of its indebtedness. The administrator appointed in October, 1861, was stricken with paralysis in August, and died on November 3rd, 1863. The survivor had the right, and upon him devolved the duty of settling up the firm business, and he had a reasonable time in which to do so. No settlements seem to have been attempted, and the right of the survivor administrator to bring about this, passed unimpaired to him. It is not shown that any detriment has come to the estate in consequence, and we concur with the Court, that it would not be just to charge the half of this property to the deceased administrator.

We do not assent to the expressed opinion that the interest of the deceased is unascertained and indefinite, for in the absence of evidence to the contrary, the partners are presumed to be equally and alike interested in the joint business. *Taylor* v. *Taylor*, 2 Murphy, 70.

7. The next exception is to the referee's refusal to charge the administrator with the value of the slaves that went into his possession. The facts found bearing upon this point are these: R. W. Goldston owned slaves valued at about $8,000; he also had a large real and personal estate, more than sufficient to pay all the debts and liabilities known to his administrator. He and his sister, Louisa A. Goldston, who were next of kin and distributees, at October Term, 1862, applied for, by petition to the County Court of Moore, and obtained a decree for the partition of the slaves, and they were so divided, and a share in severalty assigned to each, in November. The slaves afterwards became free by the results of the war, and the property in them was lost.

This partition vested a separate and several title in the respective co-tenants, and as no refunding bonds were given, was in strictness a *devastavit*, and this notwithstanding the right of credi-

tors in equity to pursue the property, and subject it to their debts. But if such bonds had been given, they would have afforded no security to the creditors under the rulings of this Court in *Hinton* v. *Whitehurst*, 68 N. C., 316, and consequently they have suffered no harm therefrom.

8 and 9. These exceptions relate to the same subject matter, and are in like manner overruled.

10 and 11. These exceptions have reference to the hires of the slaves, and are sustained in the Court below.

12. This exception is withdrawn.

13. The relator objects to the allowance of divers sums paid for taxes in 1861 and 1862, on the ground that the personal estate is not liable for the taxes accruing on descended lands after the ancestor's death, nor the taxes due from the other named persons in the list. The exception is disallowed except as to $9.30, it not appearing, as the Court finds, from the tax receipts that the taxes on lands were paid, or that any assessments were made after the intestate's death. The exception is allowed as to such as were paid for the intestate, as guardian.

14, 15, 16. The 14th, 15th and 16th exceptions are surrendered, and not insisted on.

17 and 18. These are sustained in the Court below.

19. The nineteenth exception is to the allowance of payments made by the administrator, upon a series of specified open accounts, within two years after administration granted, while there were unsatisfied debts, of higher dignity, outstanding. The principal so paid on open accounts is $328.39 or thereabouts.

The Court overrules this exception, on the ground that the estate was amply solvent, and so continued during the administrator's lifetime. But it is not found that the personal estate alone was sufficient. We do not agree in this view of the case, and the administrator had no right thus to apply the funds, nor is he excusable unless he had an amount sufficient, without touching the real estate. He ought to be charged with this amount, and we reverse the ruling of the Court in this particular.

We are next to consider the relator's exceptions to the supplemental report.

The exceptions numbered from 1 to 9 inclusive, are withdrawn, and these, as well as those mentioned from 11 to 17, also inclusive, are based upon an averment that the findings referred to are " contrary to the evidence."

These have no place upon the hearing in this Court, and the decision of the Court below is conclusive.

20. This exception is sustained in the Court below.

Defendant's exceptions: These, six in number, are all but two disallowed, and the defendant not having appealed, the rulings thereon are not before us.

2. The second exception as to the charge against the administrator of the price of shingles, to-wit: $9, and $9.59 interest, bearing date April 26, 1864, after his death, was properly sustained.

5. The 5th exception to the administrator's being charged with certain household furniture divided, as were the slaves, between the distributees, allowed upon the ground of the sufficiency of the real and personal estate to pay all the debts, must be reversed and the relator's exception thereto sustained. This is a part of the personal estate which did not perish, as did the property in slaves, and ought to be accounted for in this action.

We have thus considered the various matters involved in the relator's appeal upon the facts established before the Court, by which our examination of them is controlled, this being an action at law under our former system, and as the record, inclusive of evidence, approaches 400 pages in manuscript, it is manifest the already onerous labors of the Court would be greatly increased if we were to pass upon the appeal as a case de novo.

The report must be amended and corrected by the further credits allowed the relator, to which end, if the parties require, a reference must be made to the clerk, though it may prove of little practical value in view of the large credits allowed to the administrator.

Error. Modified.