JONATHAN T. GAY et al. v. WM. GRANT, Adm'r of EDMUND JACOBS et al.

*Administration—Executors and Administrators—Evidence— Will—Devise—Powers—Insolvency—Sales.*

(DEFENDANTS' APPEAL.)

1. An administrator or executor will not be charged with a debt which came into his possession, in the absence of evidence of the solvency of the debtor ; nor will he be, *prima facie*, chargeable with debts which he has inventoried as " doubtful."

2. Where administration was granted in 1862, and the administrator received bonds and other evidences of indebtedness due from persons who were then solvent, but who became insolvent by the results of the war, and it appeared that all the indebtedness of the estate had been discharged : *Held*, in an action by the legatees and distributees for account and settlement, that owing to the disturbed condition of the country, and the obstacles in the way of making collections by the ordinary processes of the law, the administrator was not chargeable with negligence in failing to collect.

3. Where the personal representatives of a surety of a deceased administrator were sued by the legatees and distributees for an account and settlement of the estate which had been committed to their principal, and the defendants offered in evidence the record of a

settlement had with the Clerk of the Superior Court, in which some of the plaintiffs were parties, but others—infants—were not: *Held*, that under the particular circumstances of the case, this was an exception to the general rule, that the record of an action is only evidence against the parties thereto, and was competent against all the plaintiffs ; *Held further*, that, in such an action, the burden was not upon the defendants to account for the absence of evidences of debt which their principal might have been charged with.

4. Where it appeared that nothing could be collected from a debtor by legal process, but that he had some property, and the administrator succeeded in collecting a debt due him individually from such debtor : *Held*, that the administrator was not liable for failing to collect the amount due his intestate.

5. Where an administrator was indebted to the estate of his intestate, and had ability to pay his indebtedness, though his property was not subject to legal process and he was thereby insolvent : *Held*, that he should have discharged his indebtedness, and his bond was liable for the amount thereof.

6. Executors and administrators cannot purchase at their own sales, and if they attempt to do so, they may be charged with the value of the property acquired by them at the time of the pretended purchase.

(PLAINTIFF'S APPEAL.]

7. A devise. " that all my landed estate shall be sold, and that the proceeds of sale shall be equally divided among all of my children," conferred no power upon the executor, nor upon an administrator *cum testamento annexo* to sell. The lands vested in the devisees to be sold and divided by them, or under the direction of the Court. The statute—Rev. Code, § 40, ch. 46—did not confer power to sell upon administrators, with the will annexed, where that power could not have been exercised by an executor.

DEFENDANT'S APPEAL.

CIVIL ACTION, tried before *Shepherd, J.*, at June Term, 1888, of NORTHAMPTON Superior Court, upon exceptions to a referee's report. Both parties appealed from the judgment rendered.

Green Stancell died in January, 1862, leaving a last will and testament, in which no executor was named, and at March Term, 1862, of the Court of Pleas and Quarter Sessions of Northampton County, S. T. Stancell and L. D. Gay were appointed administrators, with the will annexed, and executed bond in the sum of $125,000, with Edmund Jacobs and J. M. S. Rogers as sureties. Both these sureties are dead and the defendants are their administrators.

S. T. Stancell died in 1873, and R. H. Stancell, one of the plaintiffs, is his administrator, and L. D. Gay, the surviving original administrator of Green Stancill, is also one of the plaintiffs in this action, which is brought by the devisees of Green Stancell, against the defendants, administrators respectively, of Edmund Jacobs and J. M. S. Rogers, sureties on the original administration bond, for an account and settlement of the assets of the estate of Green Stancell, which were collected, or ought to have been collected by his administrators, &c.

By an order in the cause it was referred to Robert O. Burton, Jr., Esq., to state an account of the administration of S. T. Stancell and L. D. Gay, administrators, &c., of Green Stancell, deceased, and to find all issues of law and fact arising on the pleadings in the cause.

The referee made his report, charging the defendants with divers notes and accounts set out therein. The defendants filed numerous exceptions to the findings of the referee, which were passed upon by the Court below. Those that were overruled are brought to this Court for review.

*Mr. R. B. Peebles*, for the plaintiffs.
*Messrs. Thos. N. Hill* and *J. M. Mullen*, for the defendants.

DAVIS, J., (after stating the case). We deem it necessary to state only the findings of fact in reference to the overruled exceptions and the ground of the exception; such of the

items of the account reported by the referee, as are similar in character both as to findings of fact and the ground of exception, will be considered together.

*First Exception.*—Defendants are charged with bonds or Sol Deloatch, Brittain Edward, and A. R. Deloatch. With reference to these bonds the referee finds (as amended by the Court as to the last) that they were inventoried without designation, and no evidence was offered as to the condition of the debtors during the war or since; no efforts were shown to have been made during the war or since to collect, except that suit was brought to Spring Term, 1867, of Northampton Superior Court, and judgment rendered."

The defendants say that, as those bonds were placed in the hands of an attorney, due diligence was shown, and the "judgments unsatisfied" show insolvency, and they ought not to be charged with them.

There are no unpaid debts outstanding against the estate of Green Stancell, and this is an action by the devisees and legatees, and as there were no means of collecting debts during the war except in Confederate currency, and it appearing that no debts remain to be paid, the administrators would not be chargeable for not collecting in Confederate money, there being no necessity for so doing. It has been so held in *Green* v. *Barbee,* 84 N. C., 69, and other cases.

It has been often held that an administrator is not an insurer of the estate committed to his charge. If he exercises the diligence and care in collecting and securing the assets of the estate which a prudent and faithful man would in the management of his own property, and losses occur which he could not prevent, he will not be charged with such losses. He is only required to be honest, faithful and diligent. *Nelson* v. *Hall,* 5 Jones Eq., 32 ; *Hobbs* v. *Craige,* 1 Ired., 332 ; *Beall* v. *Darden,* 4 Ired. Eq., 76 ; *DeBerry* v. *Ivey,* 2 Jones Eq., 370 ; *Keener* v. *Finger,* 70 N. C., 35 ; *Dortch* v. *Dortch,* 71 N. C., 224 ; *Moore* v. *Eure, ante* 11.

101—14

In *Worthy* v. *Brower*, 93 N. C., 344, it was held that an administrator was not chargeable with bonds entered in his inventory and placed in the hands of an officer for collection, and it was also held in the same case that he was not to be charged with a debt in the absence of any evidence as to the solvency of the debtor. That case like the present had for its purpose the settlement of an administration account of transactions had during and just after the late war, and it is said that if the debt was good the collection of it was so obstructed " as to excuse the administrator for his delaying an effort to enforce payment, and if the debt could not have been collected, by reason of the debtor's insolvency, he is not of course responsible." See also *Grant* v. *Reese*, 94 N. C., 720.

The disturbed condition of the country during and after the war, the great loss in property and consequently in the value of credits, the obstructions interposed by legislation in the way of stay laws, the interference by military orders giving to debtors the opportunity of preferring such creditors as they might choose to favor, and like hindrances, &c., are matters of general knowledge, and it would be as contrary to right reason as to justice to ignore them in passing upon the accountability of fiduciaries who, by the exercise of the highest degree of good faith and diligence, were frequently unable to prevent losses which in ordinary times could easily have been prevented. Suits were brought against the debtors and the debts were reduced to judgments, and in the absence of any evidence as to the solvency of the debtors, the defendant ought not to be charged with those debts, and the first exception is sustained.

*Second Exception.*—The second exception embraces divers notes and accounts with which the defendants are charged, numbered 53, 54, 56, 57, 58, 59, 62, 63, 64, 65, 66, 67, 68, 69, 73, 74, 75, 76, 78, 80, 81, 82, 83, and 84, as to all of which the finding of the referee was that they were " inventoried

without designation, and the bonds were not produced or their absence accounted for, and no evidence was offered as to the condition of the debtors."

The exceptions of the defendants as to the report of the referee as to these items is as follows : "That he has charged the choses in action in full without scaling them, when they should have been scaled as of the date when due. He should have applied the scale as of January 1864, two years after the qualification of the administrators. And as to 62 to 69 inclusive, the absence of the bonds is accounted for by exhibit " D," which is ruled out as evidence against the infant plaintiffs to which defendants excepted."

Exhibit " D " referred to is an account of L. D. Gay and S. T. Stancell, administrators, &c., of Green Stancell, stated by N. R. Odom, " Clerk of the Superior Court and Judge of Probate of Northampton County," on the 1st day of May, 1874, in proceedings instituted by S. T. Stancell and L. D. Gay, as administrators with the will annexed of Green Stancell, against the devisees and legatees of the deceased for the purpose of a final account and settlement. In that account (Exhibit " D.") the debts referred to are included in the list of " Bonds due the estate of Green Stancell, deceased, not collected, the parties being insolvent."

As against the plaintiffs, who were infants, the Conrt declined to admit the account contained in the record in the proceedings referred to because not having been properly made parties (*Stancell & Gay* v. *Gay*, 92 N. C., 462) they were not bound by any judgment or fact found in that record.

The ruling of the Court below is undoubtedly in accordance with the well settled general principle that the record cannot be used as evidence against persons who were not parties to it, and who were in no way bound by it, but under the peculiar facts in the case before us we think the rule in its ordinary strictness does not apply : The defendants are the administrators of the surety on the administration bond

of S. T. Stancell and L. D. Gay. Neither they nor their intestates were ever charged with the custody and control of any of the bonds in question. Neither L. D. Gay, one of the administrators for whose default the plaintiffs are seeking to hold his sureties accountable, nor the administrator of his deceased co-administrator, is a party defendant, but both occupy adversary relations to the defendants, being plaintiffs in this action, and to them would properly attach the duty of accounting for the existence or non-existence of the bonds with the custody and disposition of which the administrators with the will annexed of Green Stancell were properly chargeable. They might reasonably be expected to be able to give some account of them ; it is not to be presumed that the administrators of the deceased sureties, or that the sureties if living, would be able to do so without their aid. In addition to this, in the action and account in which the bonds in question are reported as not collected because of the insolvency of the debtors, the other plaintiffs in this action who were *sui juris*, were parties having an interest in common with the infants; and all these facts taken together are sufficient to reverse the ordinary rule which would devolve upon the defendants the burden of accounting for the bonds in question, and discharge them from liability therefor, in the absence of any affirmative proof that they were solvent or had been or could have been collected.

Recognizing in the fullest degree the fidelity, diligence and good faith to which the administrators and like fiduciaries are held, and recognizing further the general principle which would require them to account for all the assets which went into their hands, which general rule would require the administrators to account for the bonds in question, or show some sufficient reason for not doing so, or if they were solvent to account for the amount of them, unless they could show that due and reasonable diligence had been used, and they had failed to collect them, yet this gen-

eral rule, which thus *prima facie* charges administrators, is only one of evidence, from which the presumption of fact is raised, that they collected, or ought to have collected the bonds, and devolves upon them the burden of showing the facts to be otherwise if they wish to discharge themselves from liability, but under the circumstances of the case before us, it would be unjust to apply this rule to the defendants, who are the administrators of the *sureties* on the administration bond, and though the estate of their intestate is liable for any default of the principal obligors, they ought not, in a case like this, to have thrown upon them the burden of accounting for the absence of bonds' which have been or ought to have been, under the control of one of the plaintiffs, and of the intestate of another, and in the absence of any evidence as to the solvency of the bonds in question, the defendants ought not to be charged with them.

No exception is taken to the fact that neither the surviving administrator, with the will annexed of Green Stancell, nor the administrator of the deceased co-administrator are made parties defendant, but appear on the side of the plaintiffs in an action against the administrators of the deceased sureties on the administration bond, but it presents the anomaly of a suit by a principal on a bond against his sureties. *Smith* v. *Bryson*, Phil. Eq., 267.

The record shows that the administrators received and paid out money during the war.

The exception to the refusal of the Court to apply the scale as of January, 1864, two years from the qualification of the administrators cannot be sustained.

*Third Exception.*—This includes items Nos. 51, 52, 66, 72 and 86, as to which the finding was as follows: "Inventoried without designation (as to solvency). No effort to collect during the war. Suit brought to Spring Term, 1867, of the Superior Court, and judgment rendered. No evidence

of debtor's condition." The exceptions in regard to these items must be sustained, for the reason given in considering the first exception.

*Fourth Exception.*—Defendants were charged with Nos. 60 and 61, bonds of W. B. Stubblefield. The finding of the referee is: "Has been insolvent continuously since the administrators qualified. Bonds inventoried without designation. Bonds not produced nor accounted for." Exception: "For that the evidence shows notorious insolvency." For reasons already given this exception must be sustained.

*Fifth Exception.*—This is No. 71, with which defendants were charged, and in regard to which the finding of fact, as corrected by the Court, is as follows: "This bond inventoried as doubtful." Bond not produced, or its absence accounted for. The debtor was insolvent." For reasons already stated this exception must be sustained.

*Sixth Exception.*—This is No. 89, bond of J. T. Branch, in regard to which the following facts are found: "Bond inventoried without designation. Debtor was solvent to the end of the war, but had the reputation of owing a good many debts. Ever since the war has been insolvent, but had considerable property, four thousand dollars. Suit brought to Spring Term, 1867, of the Superior Court, and judgment rendered. S. T. Stancell individually, by splitting up a claim of $1,400 into notes of $100 each since the war, made the entire claim. Claim could have been collected by due diligence."

The defendants' exception was as follows: "That upon the finding the defendants ought not to be charged, and the facts show due diligence."

As has been already stated, and for the reasons stated, the administrators would not be chargeable in the absence for any necessity for so doing, for not collecting during the war, during which time the debtor was solvent. Could they have collected the claim by due diligence after the war? That is,

could they have collected it by any legal process? The referee (whose finding is sustained by the Court below) seems to base his finding upon the fact that, though the debtor was insolvent, S. T. Stancell, one of the administrators, made an individual debt of $1,400 out of him, by having it split up into new notes of $100 each. This fact shows quite conclusively that the collection of the $1,400 depended, not upon the power of S. T. Stancell to collect, but upon the willingness of the debtor to pay. He might be willing to pay one debt and not willing to pay another. Neither could be collected, as the delays of the law then were (we take judicial notice of this fact), out of an insolvent debtor who, though having property, might choose to pay one creditor in preference to another. Because the administrator collected an individual debt, which he was only able to do by the voluntary action of the debtor, must he be charged with a debt due from the same debtor to the testator, upon which he had to bring suit, and which he could not collect by law? If it be said that he should have used the same diligence in collecting the debt due the estate as his own, the answer is, that from the facts found, it did not depend upon his diligence or power, but upon the will of the debtor, and the administrator ought not to be charged, unless it was in his *power*, by due diligence, to collect. Would good faith forbid his collecting an individual debt (which he could not collect by suit) by the voluntary aid of the debtor, because he could not collect, without suit, a debt which he held in a fiduciary capacity? The delays thrown in the way of the collection of old debts by legislative discrimination, and by stay laws and ordinances, obstructed the power of the most diligent in collecting old debts; and though these ordinances and laws were unconstitutional, and so declared (*Parker* v. *Shannonhouse*, Phil. Law, 209; *Jacobs* v. *Smallwood*, 63 N. C., 112; *Greenlee* v. *Greenlee*, 63 N. C., 593,) they still place it out of the power of the administrators to make an old debt out of

an insolvent debtor, and the exception must be sustained.

*Seventh Exception* —This is to the charge of the account against E. C. Davis, No. 98, in regard to which the finding is as follows: "Inventoried without designation. Solvent during the war. Land sold in May, 1868, and has not had property sufficient to pay his debts since the war."

The defendants except for "that the finding shows that the defendants ought not to be charged."

For reasons applicable to this exception already stated, it must be sustained.

*Eighth Exception.*—Defendants are charged with a bond of N. Pruden, No. 102, in regard to which the finding is: "Bond inventoried doubtful. Bond not produced, or its absence accounted for." Defendants except, "For that upon the finding, they ought not to be charged."

This exception should have been sustained for reasons applicable already stated, and for the further reason that the bond, having been inventoried "doubtful," was not *prima facie* chargeable against these defendants.

*Ninth Exception.*—This includes bonds Nos. 103, 104 and 105, with which defendants are charged, and in regard to which the finding is as follows: "Inventoried without designation. Solvent during the war. Land sold by Sheriff in May, 1868. Has not had property sufficient to pay since the war. No effort shown by administrators to collect, except suit brought to Spring Term, 1867, of the Superior Court, and judgment rendered. Bond not produced or absence accounted for."

Defendants except, "For that upon the findings of fact, they ought not to be charged."

For reasons already stated and applicable to this exception, it must be sustained. It should have been stated, as one of the reasons for the non-production or absence of bonds in all cases in which suits were brought and judgments obtained, the judgments themselves accounted for the non-

production of the bonds. They ought to have been cancelled and filed as " specialties" with the judgments.

*Tenth Exception*—This exception embraces notes and accounts (Nos. 107) of S. T. Stancell, the deceased administrator, with regard to which the finding was as follows: "They were inventoried without designation. S. T. Stancell was insolvent from 1862 until his death, but was able to pay these claims. $1,400 were collected for him after the war from Joseph F. Branch, and from $5,000 to $6,000 were collected out of him by executions since the war, and $5,500 of assets came into the hands of his administrator."

Defendants except, "For that, upon the finding, they ought not to be charged with S. T. Stancell's indebtedness."

This exception cannot be sustained. Though there seems to be some conflict in the findings of fact, it was the duty of the administrator, when he had funds in his hands, to have discharged these debts. He could not sue himself—other creditors made their debts out of him by execution—he could have paid, and he was clearly chargeable. The defendants must be charged with these debts.

*Eleventh Exception.*—The defendants are charged (No. 108) with the value of certain personal property bought at the sale, December 22, 1862, by the administrators S. T. Stancell and L. D. Gay, scaled as of the day of sale.

The defendants excepted, " For that the scale was applied as of the day of sale, when it should have been applied as of the day when the sale notes became due and collectible"—that is, six months later.

This exception cannot be sustained. The administrators had no right to purchase at all, and having done so, they were properly chargeable with the value of the property purchased by them on the day of sale.

*Twelfth Exception.*—This exception relates to the proceeds of the sale of land made by the administrators, with the will annexed, of Green Stancell, deceased, and though the writer

had entertained a different view of the construction of the statute empowering administrators, with wills annexed, to sell land devised to be sold, that question has been settled by the judicial construction put upon the statute by this Court, and the defendants' exception in relation thereto is disposed of in the plaintiffs' appeal.

The account will be modified in accordance with this opinion.

Modified and remanded.

### PLAINTIFFS' APPEAL.

MERRIMON, J.  The exceptions of the appellants in this appeal are founded, for the most part, on the supposition and expectation that this Court will over-rule the case of *Stancell* v. *Gay*, 92 N. C., 455, disregard the judgment in that case and treat it as a mere nullity.  We are not in the least inclined to do so.  No good reason is assigned why we should.  On the contrary, further scrutiny and reflection serve to strengthen our conviction of the correctness of the decision in that case, and it must remain undisturbed.  Acts 1868-'69, Ch. 113, § 96; Bat. Rev., Ch. 45, § 147; *The Code,* § 1525; *Staley* v. *Sellars,* 65 N. C., 467; *Bumpass* v. *Chambers,* 77 N. C., 357; *Houston* v. *Howie,* 84 N. C., 349; *Johnson* v. *Futrell,* 86 N. C., 122; *Leach* v. *Railroad,* 65 N. C., 486; *Little* v. *McCarter,* 89 N. C., 233; *Peoples* v. *Norwood,* 94 N. C., 167.

The exceptions, other than those disposed of by what we have just said, are immaterial, inasmuch as we are of opinion, the grounds of which we will presently state, that the *administrators cum testamento annexo* of the will of Green Stancell, deceased, had no power or authority to sell the land of their testator.

It appears that Green Stancell died in January, 1862, leaving a last will and testament, without appointing any executor thereof, which was proven in the proper Court, and

thereafter, on the 3d day of March, 1862, Samuel T. Stancell and Lewis D. Gay were appointed administrators *cum testamento annexo* of that will, and they qualified as such. By it the testator disposed of a large estate, both real and personal. It contains nine clauses, seven of which dispose of slaves only, and the following is a copy of the eighth and ninth clauses:

"Item. It is my will and desire that all my landed estate shall be sold, and that the proceeds of sale shall be equally divided among all of my children, (my grand-children, S. T. and M. D. Long, to have one share.)

Item. I wish all of my perishable property to be sold to the best advantage, and the proceeds of sale, together with what money I have and is due me, shall be equally divided among my heirs."

Professing and purporting to act under and in execution of the first of these clauses of the will, and the statute (Rev. Code, ch. 46, § 40), taken in connection therewith, the administrators named undertook, on the 22d day of December, 1862, to sell the real estate of their testator, and to execute deeds of conveyance to the purchasers at the sale thereof sufficient to pass the title of the land to them respectively.

The appellees contend that such sale and deeds of conveyance were absolutely void, upon the ground that neither the will nor the statute, nor the will and the statute cited taken together, conferred upon these administrators power to sell the land of their testator.

The inheritance descended to the heirs-at-law of the testator, subject to be divested when the land should be sold as directed in the clause of the will first above recited, because he did not devise or dispose of it as land to any person —he simply directed that it be sold, without saying who should sell it, and that the proceeds of the sale be equally divided among all his children named, two of his grand-children to take one share. *Wood* v. *Sparks,* 1 D. & B., 389 ; *Ferrebee* v. *Proctor,* 2 D. & B., 439.

The testator failed to appoint an executor of his will, but if he had done so, in the absence of some statutory provision allowing him to do so, such executor could not have sold the land, because at common law he had nothing to do with the real property of the testator, and he could not have authority sell it, unless it had been devised to him to be sold, or unless the will conferred upon him power to sell it, and this appeared expressly or by reasonable and just implication from what appeared in the will itself. *Foster* v. *Craige*, 2 D. & B. Eq., 209.

In this case the will conferred no authority in terms nor by implication on the executor, if one had been appointed, to sell the land. It was not to be sold, nor was it necessary to sell it, to pay debts of the testator, nor was it to be applied or distributed in the ordinary course of the duties of the executor; nor were the proceeds of the sale directed to constitute any part of a common fund to arise from the sale of real and personal property to be distributed or administered by the executor, if one had been appointed. On the contrary, one distinct clause of the will directed a sale of the land, and another directed a sale of the personal property, the two distinct funds to be so raised to be distributed as directed in the will. There is nothing in the will that suggests that the executor, if one had been appointed, should sell the land.

Nor was there any statutory provision prevailing at the time the will took effect that would have allowed an executor of it to sell it. That cited above (Rev. Code, ch, 46, § 40,) did not confer such power. It provided that " when *part* of the executors of any person making a will of lands, *to be sold by his executors*, die or refuse to take upon them the admintration; or when *all* the executors die, or refuse to take upon them the administration ; or when there is *no executor* named in a will *devising lands* to be sold, or to be sold by executors ; in every such case, such executors as qualify, or having

qualified, do survive, or the administrator, with the will annexed, may sell such land," &c.   As to executors, this provision embraces cases in which the will directs land *to be sold*, first, by *executors*, and *part* of them *die*, or *refuse* to take upon them the administration; secondly, in which they *all die* or *refuse* to take upon them the administration; thirdly, in which the will directs the *executor* or the *executors* to sell the land, and *none* are appointed. No one of these classes embraces the case before us.   As we have seen, the will did not direct the executor or executors to sell the land, if one or more had been appointed, nor could they have done so, for reasons already stated.   The purpose of the statute was to provide for executing the power to sell land in cases where the will directed the *executors to sell it*, and part or all of them would not or could not join in the execution of the power conferred upon them, and where the executor or executors were empowered to sell it, but none were appointed to execute the power.  The object was to supply the absence of the executor or executors in cases where they *were charged with the execution of a power* to sell land of the testator.   *Hester* v. *Hester*, 2 Ired. Eq., 330; *Smith* v. *McCrary*, 3 Ired. Eq., 208.

It was no part of its purpose to authorize the administrator, *cum testamento annexo*, to execute a power the executor could not execute, if he were living; he could execute such power only in the cases where the executor or executors were all dead, and where the executor or executors were empowered to sell the land, and none were appointed to execute the power. It is not probable, nor to be merely inferred, that the Legislature intended that the administrator should execute powers not conferred upon the executor.   This would, in effect, be to create a power and have it executed not created or contemplated by the testator.   Moreover, when the will simply directs the sale of land, it descends to the heir, and the legal implication is, that he shall execute the power, if need be,

under the superintendence and direction of the proper Court. *Foster* v. *Craige, supra.*

It is suggested that one clause of the statute recited above, declares, in terms, that "where there is no executor named in a will devising lands to be sold, or to be sold by executors," the administrator shall execute the power. In view of the connection of this clause, the inconvenience and evil to be remedied—its extent and nature, and the clear purpose of the statute, the fair and reasonable interpretation of it is, that it is, to some extent, elliptical, and that, in effect, it should be taken as if it read, in terms, thus: "Or when there is no executor *named* in a will devising lands to be sold (*by the executor*), or to be sold by executors." If this is not the correct interpretation, then the case, where land was devised to be sold by the *executor*, and none was appointed, was not provided for, while the other cases were provided for with care and precision. If the purpose of the statute was to give the administrator authority in all cases to execute the powers of wills directing lands to be sold, in which no executor was named, then wherefore were the words, "or to be sold by executors," used at all in the clause just mentioned? Were these words inapt, pointless, mere surplusage, and intended to serve no purpose? This is not at all probable.

In adverting to the statute under consideration in *Vaughn* v. *Farmer*, 90 N. C., 607, the Chief Justice said: "It is true the amendment confers the power when no executor is named in a will devising lands *to be sold, or to be sold by executors;* but a larger operation given to these words than those used previously, which vest the power in a part of the executors, when the will directs land *to be sold by executors*, would result in the bestowal of more power upon the administrator than could be exercised by the executors, and this cannot be deemed the meaning of the law." The like view was ex-dressed in *Council* v. *Averett*, 95 N. C., 131.

It thus appears that if the testator had appointed executors of his will, they could not have executed the power to sell the land therein directed to be sold, and, therefore, the statute did not confer upon the administrators, *cum testamento annexo*, authority to sell it, and the sale thereof which they undertook and purported to make was inoperative and void.

Both the plaintiffs and defendants appealed. This is the plaintiffs' appeal from so much of the judgment as overruled certain of their exceptions to the report of the referee. As to these exceptions the judgment must be affirmed, and it must be modified in accordance with this opinion, and what is said and decided in the appeal of the defendants in the same case. To that end let this opinion be certified to the Superior Court according to law.

Affirmed.