J. R. GOMER AND WIFE, MARY FRANCES GOMER, AMOS J. GOMER AND WIFE, EUNICE H. GOMER, R. G. GOMER AND WIFE, LILLIAN J. GOMER, ETHEL G. RYDER AND HUSBAND, W. T. RYDER, BERNICE G. BENTON AND HUSBAND, W. W. BENTON, ELLIOTT R. HORTON AND WIFE, MARY A. HORTON, W. HAGAR HORTON AND WIFE, MARGUERITE HORTON, WALTER E. HORTON AND WIFE, VIRGINIA J. HORTON, R. B. PIERCE AND WIFE, LYDIA H. PIERCE, MINNIE H. HOBBS AND HUSBAND, JAMES W. HOBBS, DEMPSEY HORTON AND WIFE, KATHERINE C. HORTON, ELSIE H. BARNHILL AND HUSBAND, S. C. BARNHILL, PLAINTIFFS, v. M. P. ASKEW, DEFENDANT.

(Filed 21 September, 1955.)

**1. Executors and Administrators § 12b—**

The will in suit provided that the executor should "come down & take an inventory of my chattel property & real estate," bequeathed the home tract to testator's wife for life, and further provided that after her death it should be "sold & divided (as all of my other property) equally between all of my children." *Held:* It was the intent of testator that all of his property, with the exception of the home tract, should be sold forthwith and the proceeds equally divided between his children.

**2. Wills § 33c—**

Where the will devises certain lands to testator's wife with provision that after her death the lands should be sold and the proceeds divided between testator's children, the children take vested remainder interest in the land with the right to immediate enjoyment being postponed for the benefit of the life estate of the widow.

**3. Wills § 40—**

The widow's dissent from the will terminates her interest in lands devised to her for life and accelerates the right of the remaindermen to immediate enjoyment, and she takes nothing under the will, but is entitled to dower based upon all the real property of which her husband died seized, and a child's part in the personalty, with allowances for a year's support

for herself and children under 15 years of age. The fact that dower is allotted in the same lands which were devised to the widow for life is a mere coincidence and does not affect the principles of law applicable.

**4. Same—**

If the testator is regarded as charged with knowledge of the statute law defining the widow's right to dissent, he must be regarded also as charged with knowledge that if she exercises such right, the dissent accelerates the rights of the remaindermen.

**5. Executors and Administrators § 12b—**

Where land is devised to be sold and the proceeds divided among heirs or designated beneficiaries, nothing else appearing, the executor has no implied power to make the sale, but where realty and personalty are to be sold for division, nothing else appearing, the power of the executor to sell the realty involved in making division of the realty and personalty, is implied. These are rules of construction, to aid in the ascertainment of testator's intention, and must yield if the provisions of the will manifest a contrary intent.

**6. Same—**

The will devised certain lands to testator's widow for life with further provision that at her death the property, as well as all his other property, real and personal, be sold, and the proceeds equally divided between his children. The widow dissented from the will. *Held:* The dissent of the widow accelerated the vesting of the right of immediate enjoyment in the remainder, and the executor had authority to sell all the personalty and realty, subject to the widow's dower, for division of the proceeds among testator's children.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Clifton L. Moore, J.,* March Term, 1955, of GATES.

Civil action to determine ownership of a 65-acre tract of land. Upon waiver of jury trial, the court heard the evidence. Unchallenged findings include the facts stated below.

Dempsey Gomer died testate on some undisclosed date between 2 May, 1908, the date of his Will, and 25 August, 1911, the date his Will was probated.

The dispositive provisions of his Will are these:

"This is the last will and testimony of Dempsey Gomer, being of sound mind feeble health I hear by maketh Dr. E. F. Corbell Executor of my estate after my death, I want him to see that I recave a decent burial beside my first wife Lida. Then I want Dr. E. F. Corbell to come down & take an inventory of my chattel property & real estate— the home track known as the 'Jackey Jones track' which I bequeath to my wife Lizzie Gomer during her natural life after her death to be sold

& divided (as all of my other property) equally between all of my children.

"I bequeath to Charles Parker one hundred dollars or a horse of the same value for faithful services rendered me for the past 12 years. If my wife or any one else should charge my minor children board then my Executor shall become Guardian & shall board them elsewhere."

Testator owned both real and personal property. His realty included the "Jackey Jones" tract referred to in the Will. He was survived by his widow (Lizzie) and by his seven children, three by his first marriage to Lida and four (then minors) by his second marriage to Lizzie.

On 25 August, 1911, when the Will was probated, Dr. Corbell qualified as executor. On 9 September, 1911, the widow dissented from the Will. On 28 December, 1911, the 65-acre tract now in controversy, being the identical land referred to in the Will as the "Jackey Jones" tract, was allotted as the widow's dower tract.

The executor sold all personalty and all realty, subject to the widow's dower in the 65-acre tract. Upon final settlement, the executor, after payment of debts, costs of administration and the Parker legacy, paid to the widow as her distributive share in the personalty the sum of $271.54 and paid to each child or his guardian the sum of $506.34, *i.e.*, one-seventh of the residue made available from the sales of realty and personalty. Final settlement was made by the guardian with each child as he or she became 21, the settlement with the youngest child having been made in 1926.

The 65-acre tract in controversy and an adjoining 25-acre tract were sold together, subject to the widow's dower in said 65-acre tract; and on 3 February, 1912, the executor, upon receipt of the purchase price of $1,068.00, executed and delivered a deed therefor to Martin Branton, the highest bidder at public sale. On 22 February, 1912, Lizzie, the widow of Dempsey Gomer, married W. H. Branton, brother of Martin Branton. On 4 March, 1912, Martin Branton and wife, for the recited consideration of $593.00, conveyed the 65-acre tract, subject to the widow's dower therein, to W. H. Branton. On 25 November, 1918, W. H. Branton and wife, Lizzie Gomer Branton, sold and conveyed the 65-acre tract by fee simple warranty deed, without reservation or exception; and, after *mesne* conveyances, the 65-acre tract was conveyed to defendant in 1930 and he has had possession since then.

Lizzie Gomer Branton and her second husband, W. H. Branton, sold out and moved away from the 65-acre tract in 1918. She died 18 February, 1952. W. H. Branton died 16 April, 1952. On 28 November, 1952, plaintiffs instituted this action.

Plaintiffs' case is grounded upon the allegation that the deed from Corbell, executor, to Martin Branton, in respect of the 65-acre tract,

was void because the executor had no power to sell and convey any interest therein. There is no question but that defendant's title is good if the executor's deed was a valid conveyance of this 65-acre tract subject to the widow's dower therein. No questions arise as to (1) the adequacy of sale price, or (2) the accounting and settlements made by the executor and by the guardian.

Defendant pleaded the validity of the executor's deed to Martin Branton; also, defendant pleaded facts alleged to constitute an estoppel and bar to plaintiffs' action.

Judgment was entered by the court below, adjudging that defendant was owner of the 65-acre tract in controversy, that plaintiffs were not entitled to recover anything by their action and that plaintiffs pay the costs of the action. Plaintiffs excepted and appealed.

*W. D. Boone and J. Carlton Cherry for plaintiffs, appellants.*
*T. W. Costen and Worth & Horner for defendant, appellee.*

BOBBITT, J. The testator contemplated that his wife and children would have and take the benefits provided for them in his Will. He devised a part of his real property, the "Jackey Jones" tract, to his wife, Lizzie Gomer, during her natural life. He directed that, after her death, the "Jackey Jones" tract be *sold and* (the proceeds) *divided* equally between all of his children. Further, he directed that all his other property, real and personal, be *sold and* (the proceeds) *divided* equally between all of his children. He expressed the desire that Dr. Corbell, the executor, "come down & take an inventory of my chattel property & real estate." We think the testator's intent was that all his property, real and personal, other than the "Jackey Jones" tract, be sold forthwith and the proceeds divided equally between his seven children.

The beneficial interest of the seven children of the testator in the "Jackey Jones" tract were vested remainder interests, their right to immediate enjoyment being subject to no condition precedent save the termination of the life estate of the widow. *Trust Co. v. McEwen*, 241 N.C. 166, 84 S.E. 2d 642. The intent of the testator in so postponing his children's right to immediate enjoyment in respect of this tract was for the benefit of the life estate of the widow. *Trust Co. v. McEwen, supra.*

When the widow dissented, she had "the same rights and estates in the real and personal property of her husband as if he had died intestate." Revisal of 1905, sec. 3081. Having made her election, she took nothing under the Will; but she was entitled to dower in the real property (Rev., sec. 3083 *et seq.*), a child's part in the personal property

(Rev., sec. 132 (2)) and allowances for a year's support for herself and her three children then under 15 years of age (Rev., sec. 3091 *et seq.*). (So far as the record discloses, such allowances were not claimed or paid.) Her right of dower related to all real property of the decedent, without distinction between the "Jackey Jones" tract and other realty.

The widow's dissent terminated the life estate in the "Jackey Jones" tract devised to her by the testator. This accelerated the vesting in the testator's children of their (previously postponed) right to immediate enjoyment of their interests in this particular tract. *Trust Co. v. McEwen, supra,* and cases cited.

If the testator is regarded as charged with knowledge of the statute law defining the widow's right to dissent, *Thomsen v. Thomsen,* 196 Okla. 539, 166 P. 2d 417, 164 A.L.R. 1426, cited in *Trust Co. v. Johnson,* 236 N.C. 594, 73 S.E. 2d 468, he must be regarded also as charged with knowledge that, if she exercised such right to dissent, under the decisions of this Court such dissent accelerated the rights of the remaindermen. *University v. Borden,* 132 N.C. 476, 44 S.E. 47.

The result of the widow's dissent was that the real property, subject to the widow's dower, and the entire personal estate, were to be sold and (the proceeds) divided between his seven children, subject to the payment of the debts, costs of administration, the Parker legacy, and the payment to the widow of her distributive share in the personalty.

By whom was this sale for division to be made? It seems plain that the testator intended that Dr. Corbell, the executor, take complete charge of *all* his property, "my chattel property & real estate." There is a single provision in which direction is given that all his property be sold and divided, without distinction between realty and personalty; and the implication is that the same person is to sell both realty and personalty. *Saunders v. Saunders,* 108 N.C. 327, 12 S.E. 909. It is noteworthy that four of testator's children were minors and thus unable to make sale except through a next friend or guardian. The interesting provision, "if my wife or any one else should charge my minor children board then my Executor shall become Guardian & shall board them elsewhere," suggests that the testator contemplated that the executor would have in his hands funds to be paid to or for the benefit of the minor children derived from the sale of his property.

True, the Will conferred no express power of sale on the executor. Is such power reasonably implied?

Where land is devised, to be sold for division among heirs or designated beneficiaries, nothing else appearing, the executor has no implied power to make the sale. *Broadhurst v. Mewborn,* 171 N.C. 400, 88 S.E. 628; *Epley v. Epley,* 111 N.C. 505, 16 S.E. 321; *Gay v. Grant,* 101 N.C. 206, 8 S.E. 99. But where both realty and personalty are to be sold for

division, a different rule applies. Since the statute (G.S. 28-73, Rev., sec. 62) vests in the executor the power to sell the personalty, and the fund to be divided consists of the proceeds to be derived from the sale of both realty and personalty, nothing else appearing, the power of the executor to sell the realty involved in making the division is implied. *Council v. Averett,* 95 N.C. 131; *Vaughan v. Farmer,* 90 N.C. 607. The authority of these cases is fully recognized in the *Broadhurst, Epley* and *Gay cases,* as well as in the later case of *Dulin v. Dulin,* 197 N.C. 215, 148 S.E. 175.

These are rules of construction, to aid in the ascertainment of the testator's intention. *Vaughan v. Farmer, supra.* They must yield if the provisions of the will manifest a contrary intent. *Lumber Co. v. Swain,* 161 N.C. 566, 77 S.E. 700.

The rule applied in *Vaughan v. Farmer, supra,* and cases to like effect, is applicable to the case at hand. Its application here seems in full accord with the testator's intent.

Consequently, we reach the conclusion that the executor had implied power to sell all of testator's real property (as well as all of his personal estate), subject to the widow's dower. This was done.

When the widow's dower was allotted it so happened that the "Jackey Jones" tract was allotted to her as her dower tract. We assume that the value of this tract was one-third of the value of all of testator's realty. Be that as it may, the fact that the "Jackey Jones" tract became the "dower tract" is a coincidence, without legal significance; and the law applicable is the same as if the widow's dower had been allotted in other realty.

Since we hold that the executor's deed was a good and sufficient conveyance of the land in controversy, subject to the widow's dower, we refrain from discussing the facts and law bearing upon other defenses interposed by defendant.

For the reasons stated, the judgment is

Affirmed.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.